*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

# OPINION

No. 04-08-00052-CR

Frank **RUIZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2005-CR-9646
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   May 27, 2009

AFFIRMED

A jury convicted Frank Ruiz of two counts of aggravated sexual assault committed against

his wife. Ruiz was sentenced to twenty years in prison on one count and to twenty-five years on the

second. Ruiz appeals the judgment, asserting the evidence is legally insufficient to sustain the guilty

verdicts, his trial counsel rendered ineffective assistance, and the trial court erred in restricting his

cross-examination of the complainant during the guilt phase of the trial and in admitting evidence

of extraneous acts during the punishment phase. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Frank Ruiz and M.C. were married in April 2004. M.C.'s testimony established that Ruiz attempted to control much of her life. M.C. testified she started working as a stripper at Ruiz's urging. Although she did not like stripping, she had to work when Ruiz demanded. M.C. gave Ruiz all her earnings and he decided when they would go shopping and what they would buy. M.C. testified she was not allowed to see her family with any regularity. The one exception was her brother, who was a friend of Ruiz's and would visit the couple's home. M.C. testified Ruiz also had a jealous nature. For example, he required M.C. to call him at predetermined times while she was at work. Ruiz became angry if M.C. failed to comply with this demand.

On Thursday, May 12, 2005, M.C. lost track of her cell phone while she was at work. Ruiz called her and a male employee of the club answered the phone. The employee returned the phone to M.C. and told her Ruiz had called. M.C. testified she returned the call and Ruiz was very upset that a man had answered her phone. Although she was scheduled to work a longer shift, Ruiz told her she had to leave work immediately. His voice was raised and he was cussing. Ruiz told M.C. he was going to pick her up and she "was going to get in trouble."

When M.C. got into the car, Ruiz took her cell phone and broke it. He started yelling at her, insulting her, and physically threatening her. When they arrived home, M.C.'s brother and some of his friends were there playing music. Ruiz told M.C. to "behave" and stop crying so her brother would not see her crying. M.C. testified Ruiz took her wedding ring and told her to go into the bathroom. He made her get on her knees and "to beg God for forgiveness." Ruiz told her not to move; he left the room, but returned several times to make sure she was in the same spot. After a

while, Ruiz told M.C. to get up and that she would "get disciplined" later, after her brother left. M.C. testified Ruiz calmed down later that night and the next day, Friday, he was "acting really, really nice."

At around 1:00 or 2:00 in the morning of Saturday May 14, 2005, Ruiz told M.C. he wanted to talk about the cell phone incident. According to M.C., Ruiz was calm at first, but then became angry and told her he was going to "discipline" her after all. The situation escalated into an extended period of abuse that included the sexual assaults and lasted more than six hours. What follows is a summary of M.C.'s testimony of what occurred during that time.

Ruiz grabbed the cell phone charger and threatened to whip M.C. with the cord. He required her to dance and strip for him. He forced M.C. to get on her knees and stay in one spot, and struck her in the face, knocking her backwards. Ruiz told M.C. he was going to treat her like a prostitute and make her have sex with his friends and "work the streets. " Ruiz made her walk naked to the door of the house and told her she would have to walk outside. Ruiz opened the door, but then closed it, hit M.C. in the face again, turned her around, and kicked her in the buttocks. Ruiz then told M.C. to go to the closet and pick out clothes to wear so he could take her to have sex with his friend. When Ruiz decided M.C. was taking too long, he punched her in the arm and stomach, knocking the wind out of her. Ruiz pulled M.C. out of the closet and, a short time later, while holding a belt, told M.C. to lie on the bed and insert a plastic bottle of hair conditioner into her vagina. M.C. told him she did not want to do it, but Ruiz told her he "would make 'ho's do that . . . when he was younger," and that she was a "ho and he was going to make [her] do it." When M.C. failed to comply with his demand, Ruiz grabbed the bottle, got on top of M.C., and forced the bottle into her vagina. After

removing the bottle, he told M.C. that he would "try to kill" her and would kill her mother if she pressed charges. While he was threatening M.C., Ruiz waved a toy gun at her and threw several bullets at her.

After the first sexual assault, Ruiz told M.C. to get in the bathtub, lean her head back, and open her mouth. Ruiz stood over her and urinated on her face and body. Ruiz then told M.C. to take a shower. While she was in the shower, Ruiz got the belt and threatened to hit her with it, telling her how much more painful it would be to be hit with the belt in the water. Ruiz did not hit M.C., but told her to get out of the shower, bend over, and put her hands against the bathroom wall. Ruiz then "shoved" a bottle of roll-on deodorant into M.C.'s anus. M.C. testified she screamed from the pain.

Ruiz's abuse and humiliation of M.C. continued throughout the night. He made M.C. get on her hands and knees and act like a dog. He put M.C.'s puppy in front of her face and tried to force her to put its penis in her mouth. Later, when Ruiz appeared to be tired and more calm, he told M.C. to lie on the bed next to him and give him a hug. However, instead of hugging M.C., Ruiz grabbed her around the neck with both hands and started choking her, telling her "don't breathe until I tell you to breathe."

Ruiz eventually told M.C. to go to sleep. She testified she found it difficult to do so, and had nightmares when she did. They both slept until dinner time on Saturday. M.C. did not leave the house Sunday or Monday. She testified Ruiz was still a little upset about her allowing a male to answer her cell phone, but he did not assault her further. She testified "[i]t was like he was trying to go back to normal, like he hadn't really hurt me." On Tuesday, Ruiz told M.C. she was going to go to work. When Ruiz dropped M.C. at the club, she immediately went inside, borrowed a telephone,

and called her brother to come get her. M.C.'s mother and brother arrived and took M.C. to her parent's home. She told her father about the assaults, and he called the Bexar County Sheriff's Office to report the crime. A deputy responded and obtained some basic facts about the assaults. M.C. then went to a hospital where she was examined by a nurse. Ruiz was later indicted by a grand jury.

### LEGAL SUFFICIENCY

The first count of aggravated sexual assault alleged Ruiz caused the penetration of M.C.'s anus with a bottle, the act was committed without the consent of M.C. in that Ruiz compelled her to submit or participate by the use of physical force and violence, and Ruiz, by acts or words, threatened to cause M.C.'s death. *See* TEX. PENAL CODE ANN. § 22.021 (Vernon Supp. 2008). The second count was identical to the first except it alleged Ruiz caused the penetration of M.C.'s female sexual organ with a bottle. *See id.* Ruiz argues the evidence is legally insufficient to establish he used physical force and violence to compel M.C. to submit or participate. He contends the evidence demonstrates any force he used against M.C. occurred after the sex acts were committed, and thus is insufficient to prove the use of force compelled her to submit to those acts.

In our review of the evidence for legal sufficiency, we look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App.), *cert. denied*, 546 U.S. 962 (2005). We resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

M.C. testified Ruiz struck her in the face several times, kicked her, and punched her in the arm and stomach just before the first sexual assault. When M.C. refused to use the bottle to penetrate herself, Ruiz "shoved" the object into her. Ruiz then told M.C. he would kill her and her mother if she "pressed charges." All of this occurred before Ruiz threatened to whip M.C. with a belt and then forced a different bottle into M.C.'s anus. Based on all the evidence and viewing it in the light most favorable to the verdict, a reasonable jury could have found the State proved all of the elements of each count of aggravated sexual assault beyond a reasonable doubt.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In one point of error, Ruiz asserts trial counsel was ineffective because he "failed to object to hearsay and bolstered testimony from almost every witness, leading questions, speculative answers, 404(b) evidence"; "failed to request contemporaneous limiting instructions on 404(b) evidence, and failed to request a 404(b) instruction in the guilt-innocence charge"; "failed to request a hearing outside the presence of the jury on punishment extraneous evidence and then failed to object to the admission of the evidence."

### *Applicable Law*

To succeed on an ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007). To show deficient performance, the defendant must prove by a preponderance of the evidence that his counsel's representation fell below the standard of professional norms. *Strickland*, 466 U.S. at 688; *Garza*, 213 S.W.3d at 347-48. Prejudice is demonstrated by showing "a reasonable

probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Mitchell v. State* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Trial counsel is presumed to have rendered effective assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). To overcome this presumption, "[a]ny allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). There is a strong presumption that counsel's actions and decisions were motivated by sound trial strategy. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). When the record is silent as to counsel's strategy, a reviewing court must not speculate that counsel's performance was deficient. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet ref'd). If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief. *See Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). Counsel's performance will be sufficient if any strategic motive can be envisioned and will be considered deficient only if "the conduct was so outrageous that no competent attorney would have engaged in it." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005). The standard for reviewing trial counsel's performance "has never been interpreted to mean that the accused is entitled to errorless or perfect counsel." *Ex Parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

### Extraneous Offense Evidence During Guilt Phase

Ruiz first contends counsel was ineffective because he rarely objected to "404(b) evidence," when he did object, he failed to request a contemporaneous limiting instruction, and he failed to

request a 404(b) charge. However, in his discussion under the point of error, Ruiz does not identify any evidence he contends should have been excluded under rule 404(b) or made the subject of a limiting instruction. Instead, he makes general statements about the law and refers generally to "[t]he plethora of extraneous offense evidence admitted in the case at bar."

Texas Rule of Appellate Procedure 38.1(h) requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). "Rule 38 requires [a party] to provide us with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (holding appellant presents nothing for review when he fails to discuss evidence supporting his claim). Although Ruiz refers to much of the state's evidence as "extraneous" or "404(b)" in his twenty-three-page statement of facts, it was incumbent upon Ruiz to argue that objections to this evidence properly would have been sustained or a limiting instruction properly given. *See Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). Ruiz cites authority setting forth the applicable law, but makes no attempt to show any of the purported 404(b) evidence was inadmissible or that a limiting instruction was appropriate. Nor does Ruiz argue that admission of any of the purported 404(b) evidence or the lack of an instruction should undermine our confidence in the outcome of the trial. Because Ruiz wholly fails to discuss the facts in light of the relevant authority, we conclude he has inadequately briefed this complaint. *See Williams v. State*, 937 S.W.2d 479, 487 (Tex. Crim. App. 1996); *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App.), *overruled on other grounds by Mosley v. State*, 983 S.W.3d 249

(Tex. Crim. App. 1998); *Valdes-Fuerte v. State*, 892 S.W.2d 103, 112 (Tex. App.–San Antonio 1994, no pet.).

Nevertheless, we note the record establishes much of the purported "extraneous offense" evidence was admissible or was admitted without objection as part of trial counsel's strategy. On the morning of the second day of trial, Ruiz's attorney stated on the record that he had not objected to M.C.'s testimony regarding "extraneous" bad acts presented on the first day of trial because he did not want to "highlight" the testimony for the jury. That testimony included M.C.'s description of the history of her relationship with Ruiz and her recounting of the events that occurred Thursday, May 12, the evening she misplaced her cell phone. Counsel's strategy was not "so outrageous no competent attorney would have engaged in it;" therefore, his performance was not deficient. *See Andrews*, 159 S.W.3d at 101. M.C.'s testimony about Ruiz's words and conduct during the early morning hours of Saturday, May 14, was not inadmissible "extraneous offense" evidence, but rather admissible "same transaction contextual evidence." *See Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993) (holding same transaction contextual evidence "imparts to the trier of fact information essential to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven" and is "admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged").[1] As admissible contextual evidence, rule 404(b) is not implicated. *See Delgado v. State*, 235 S.W.3d 244, 253 (Tex. Crim. App. 2007). Therefore, Ruiz would not have been entitled to either a contemporaneous limiting

---

[1] At the beginning of the second day of trial, Ruiz's counsel filed a motion in limine, seeking to exclude "extraneous offense" evidence. The trial court granted the motion as to any alleged physical abuse that occurred before May 14, 2005. However, the court denied the motion as to "contextual evidence," including Ruiz's use of cocaine on the day of the offense and Ruiz's attempt to place the puppy's penis in M.C.'s mouth.

instruction to the jury nor any instruction in the jury charge with respect to such evidence. *Id.*; *Castaldo v. State*, 78 S.W.3d 345, 352 (Tex. Crim. App. 2002).

### *Hearsay*

Ruiz complains his trial counsel was ineffective because he failed to object to hearsay testimony from "almost every witness." Once again, appellate counsel fails to provide any citations to the record. However, Ruiz appears to be complaining about testimony from three witnesses – M.C.'s mother, a nurse who testified about the contents of the notes made by the nurse who performed the examination of M.C. at the hospital, and the deputy who responded to the initial complaint. Ruiz contends his trial counsel's performance was deficient for failing to object to the testimony as hearsay, improper bolstering, and, in the case of the nurse, as violating his right to confrontation.

The State elicited testimony from the officer and the nurse regarding M.C.'s statements about the assault. It is clear from the record that trial counsel's strategy with these witnesses was to attack M.C.'s credibility. Central to this strategy was to show the jury that M.C.'s out-of-court statements to the deputy and the nurse were inconsistent with each other and with M.C.'s testimony at trial. Counsel's cross-examination of these witnesses revealed inconsistencies and omissions in M.C.'s trial testimony, and forced the State to recall M.C. to explain the discrepancies. While on recall, M.C. admitted she and Ruiz had vaginal and anal intercourse the day after the assaults, claiming she "let" Ruiz engage in sex with her although she did not "want to". Through this testimony trial counsel was able to raise the specter that M.C. and Ruiz engaged in consensual sex the day after the assaults, making Ruiz's claim that M.C. consented to all the sex acts more plausible. Counsel also stressed

M.C.'s varying accounts of the events in his closing argument. Although the jury ultimately believed M.C.'s testimony concerning the assaults, we cannot hold trial counsel's trial strategy was indicative of a deficient performance.

The "argument" portion of Ruiz's brief contains no discussion or analysis of the testimony of M.C.'s mother. In his statement of facts, Ruiz refers to her testimony that M.C. was frightened when she picked her up and said,"I don't want him to find me" and to her testimony that over the next day or so, M.C. would tell her to "Sit by me, [s]it by me." Ruiz conclusorily asserts this testimony was inadmissible hearsay and bolstering to which trial counsel should have objected. However, Ruiz makes no argument for the contentions made. Moreover, the record is silent as to counsel's strategy in not objecting to this testimony, and Ruiz fails to argue that exclusion of this testimony would probably have resulted in a different outcome. Ruiz has therefore failed to meet his burden to show ineffective assistance.

### *Leading Questions and Speculative Answers*

Ruiz's brief contains no argument or authorities in support of the contentions in his point of error that counsel was ineffective because he failed to object to leading questions or speculative answers. We do not address these complaints because they are inadequately briefed. *See* TEX. R. APP. P. 38.1(h); *Tufele v. State*, 130 S.W.3d 267-270-71 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

### *Hearing on Punishment Phase Extraneous Offense Evidence*

Lastly, Ruiz complains his trial counsel's performance was deficient because during the punishment phase of the trial, counsel (1) failed to request the trial judge make a preliminary finding that the State had sufficient evidence of the extraneous acts that a reasonable jury could find beyond

a reasonable doubt Ruiz committed those acts and (2) failed to object to admission of the evidence. *See Harrell v. State*, 884 S.W.2d 154 (Tex. Crim. App. 1994)(holding trial court, when requested, must make initial determination that a reasonable jury could find beyond a reasonable doubt defendant committed extraneous act). Ruiz complains of the failure to object to evidence he used drugs and had pornography on his computer, and evidence of a stolen vehicle, a sawed-off shotgun, marihuana, and narcotics paraphernalia found at the residence where Ruiz was arrested.[2] Ruiz asserts conclusorily that this evidence would not have been admitted had Ruiz requested a preliminary hearing because "none of this evidence could be legally linked to [Ruiz]." We disagree.

M.C. testified about Ruiz's cocaine habit and daily use of marijuana and testified Ruiz kept pornography on his computer and would show it to her. Had trial counsel requested a preliminary ruling on admissibility based on insufficient linkage to Ruiz, the trial court would not have abused its discretion in admitting the testimony. Three police officers who were present when Ruiz was arrested testified a stolen vehicle was parked in front of the house and the top of a five to six foot marihuana plant growing in the back yard was visible from the outside. All three officers testified Ruiz made statements indicating he lived at the house when he answered the door. Although somebody else owned the house, the officers testified Ruiz identified a particular room as his bedroom and various items with Ruiz's name on them were found in the room. Officers also found a sawed-off shotgun, scales commonly used for weighing narcotics, and baggies containing residue in Ruiz's bedroom. According to one of the officers, Ruiz admitted the shotgun was his and that he was aware of the large marihuana plant growing in the yard. Had the trial court heard this evidence

---

[2] The arrest took place on July 26, 2007, at a different residence than where the assaults took place.

as a preliminary matter, it would not have abused its discretion in concluding a jury could find beyond a reasonable doubt that Ruiz committed the extraneous acts. Accordingly, we cannot hold trial counsel's performance was deficient for failing to object to the evidence or to request a hearing on the admissibility of the evidence.

Ruiz also failed to demonstrate how the punishment assessed by the jury would have been different had his trial counsel requested the hearing. As required by article 37.07 of the Texas Code of Criminal Procedure, the trial court included an instruction in the jury charge at the punishment phase informing the jury not to consider the extraneous bad acts unless the State proved such acts beyond a reasonable doubt. *See Huizar v. State*, 12 S.W.3d 479, 483 (Tex. Crim. App. 2000)(holding trial court must *sua sponte* provide jury instruction at punishment phase not to consider extraneous bad acts unless State proved same beyond a reasonable doubt). Absent proof to the contrary, we will presume the jury followed the trial court's instructions. *See Thrift v. State*, 176 S.W.3d 221, 224, n.10 (Tex. Crim. App. 2005). Therefore, we presume the jury did not consider the complained-of evidence for purposes of punishment unless it was convinced beyond a reasonable doubt Ruiz committed those bad acts.

We hold Ruiz has failed to meet his burden to demonstrate by a preponderance of the evidence his trial counsel was ineffective.

### ADMISSION OF EXTRANEOUS OFFENSE EVIDENCE

Ruiz next complains the trial court erred in admitting evidence of "of prior convictions" when the State failed to give proper notice of its intent to use them. We presume Ruiz is referring to

juvenile adjudications for aggravated robbery and burglary of a habitation admitted during the punishment phase of the trial.[3]

The State initially contends Ruiz was not entitled to any notice because Ruiz failed to timely request notice. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 sec. 3(g) (Vernon Supp. 2008).[4] However, this court has previously held, albeit in an unpublished opinion, if the State voluntarily furnishes notice of extraneous acts absent any request by the defendant, it is bound by the "four corners" of the notice. *See Garcia v. State*, No. 04-06-00449-CR, 2007 WL 3084671, at *2 (Tex. App.—San Antonio Oct. 24, 2007, no pet.)(mem. op, not designated for publication); *see also Blackmon v. State*, 80 S.W.3d 103, 108 (Tex. App.—Texarkana 2002, pet. ref'd) (holding if State voluntarily provides notice of extraneous acts, burden is on State to provide complete information). In this case, the State filed an original and two amended "Notice[s] of Intent to Introduce Evidence of Extraneous Offenses/Bad Acts Pursuant to Tex.R.Crim.Evid. 404(B)[sic], 609(F)[sic], Tex.Code Crim. Proc. Art. 37.07, Sec.3(G)[sic], and Art. 38.37." The notices refer to twenty-seven crimes or bad acts allegedly committed by Ruiz, but do not mention the two juvenile adjudications. Under

---

[3] The only prior conviction admitted during the trial was a 2000 conviction for burglary of a vehicle. The State gave Ruiz prior written notice of its intent to use this conviction, and Ruiz did not object when the State presented evidence of the conviction during the punishment phase. Although Ruiz contends in his brief that "the erroneous trial court ruling" "during the guilt innocence phase of the trial" "prevented the defense from having the Appellant take the stand to offer his version of events," the trial court did not make any ruling about admissibility of the juvenile adjudications during the guilt/innocence phase. Nor does Ruiz point to any place in the record of the guilt/innocence phase where he objected to the admission of any extraneous offense evidence on the ground that proper notice was not given.

[4] "On timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by rule 404(b), Texas Rules of Evidence." TEX. CODE CRIM. PROC. ANN. art. 37.07 sec. 3(g) (Vernon Supp. 2008).

*Garcia* and *Blackmon*, it was error to admit evidence of the juvenile adjudications. We must therefore decide whether the error was harmful.

The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional error. *See Roethel v. State*, 80 S.W.3d 276, 281 (Tex. App.—Austin 2002, no pet.). We must disregard the error unless it affected Ruiz's substantial rights. *See* TEX. R. APP. P. 44.2(b). Ruiz's substantial rights were affected only if the error had a substantial and injurious effect or influence on the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). "A criminal conviction should not be overturned for non-constitutional error if the appellate court, after examining the record as whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In addition to the sordid details of the offenses described by M.C. in her testimony, the jury heard testimony during the punishment phase that Ruiz previously had been convicted of burglary of a vehicle; regularly used drugs, including cocaine and marihuana; was an avid consumer of pornography; committed the felony offense of unauthorized use of a motor vehicle by refusing to return M.C.'s car; and possessed a sawed-off shotgun and paraphernalia for weighing and distributing drugs when he was arrested. Police testified they found a stolen vehicle and a six-foot tall marihuana plant at the house where Ruiz told them he was living when he was arrested, and that Ruiz committed the offenses of failure to identify to a police officer and criminal mischief during the course of the arrest. When Ruiz testified during the punishment phase, he denied sexually assaulting M.C. Ruiz testified M.C. voluntarily used a bottle to penetrate her vagina, but denied any object was used to

penetrate her anus. He admitted he urinated on M.C., but testified it and all other sexual activity between them was consensual. Ruiz denied threatening M.C.'s life or using any force on her. In addition to claiming M.C. had lied about most of what occurred, Ruiz contended three police officers who testified about the circumstances of Ruiz's arrest also lied. Moreover, Ruiz testified in some detail about the circumstances of his adolescence and his juvenile adjudications. There is nothing in the record suggesting the lack of notice from the State prevented or hampered his ability to defend against the evidence.

Ruiz faced a range of punishment from five to ninety-nine years or life in prison and a fine of up to $10,000 on each count of aggravated sexual assault. The jury's verdicts of twenty and twenty-five years in prison and no fine is at the lower end of the punishment range. Given the nature of the evidence and the testimony presented to the jury, including Ruiz's own testimony, we hold the admission of the juvenile adjudications had but slight effect upon the jury, and therefore did not affect his substantial rights. *See Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)(appellate court should consider weight of evidence in harm analysis).

## RESTRICTION ON CROSS EXAMINATION

In his final point of error, Ruiz complains the trial court erred by "denying the defense the ability to cross examine the complainant on issues of credibility." Ruiz points to a single exchange that took place during cross-examination when M.C. was recalled to the stand to explain apparent inconsistencies between her earlier testimony and the contents of the report prepared by the nurse. During cross-examination, the following exchange took place:

> Q: [Defense Counsel] So even though you didn't remember to tell the officer the night he came out and you did remember to tell the nurse that same night, you didn't

tell them two days later when you went to make your formal statement, the statement
that would be used to prosecute this man and put him on trial for the rest –

State:  Objection to argumentative, Judge.

Defense:  It's a yes-or-no answer.

The Court:  I'll overrule the objection.

A:  I thought I had told the detective, but, obviously, it's not in the report.

Q:  Isn't it a fact that you're having a little trouble keeping your stories straight?

State:  Objection, argumentative, Judge.

The Court:  Sustained.

Trial counsel continued questioning M.C. about inconsistencies in her testimony and the testimony
produced from other witnesses. The State made only one other objection during the cross-examination, which the trial court overruled.

The record simply does not support Ruiz's contention that his cross-examination of the complainant was restricted by the trial court. The trial court sustained an objection to the **form** of the question. By its ruling, the court did not indicate any intent to restrict the **content** of the cross-examination. After the objection was sustained, trial counsel continued to question M.C. about passages from the nurse's report that apparently contained quoted statements made by M.C. during the examination. The questions pointed out the failure of her written statement to contain the same information she related to the nurse.

Even if the court's ruling could be interpreted as a restriction on the scope of cross-examination, Ruiz failed to preserve the claimed error. Trial counsel did not complain to the trial court that his cross-examination was restricted nor did counsel offer any proffer as to the general

subject matter he wished to pursue and why the examination should be permitted. *See Virts v. State*, 739 S.W.2d 25, 29 (Tex. Crim. App. 1987)(holding counsel must inform court of general subject matter on which examination sought and rationale for permitting same when trial court restricts examination on broad issues such as bias, interest, prejudice, inconsistent statements or traits affecting credibility). Ruiz's final point of error is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

Publish