

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00416-CR

**JOHN DAVID WAGUESPACK,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2012-46-C1**

## MEMORANDUM OPINION

A jury convicted Appellant John David Waguespack of sexual assault and assessed his punishment, enhanced by a previous felony conviction, at life imprisonment. This appeal ensued. In his sole issue, Waguespack contends that the trial court abused its discretion during the punishment phase by admitting evidence of a prior sexual encounter between himself, his roommate Andrew Kennedy, and an unidentified female.

On April 5, 2012, the trial court signed an agreed discovery order, which included the following provision: "The State shall provide written notice of extraneous crimes and

bad acts or convictions pursuant to Texas Rules of Evidence 609(f) and 404(b) and Arts. 37.07 and 38.37 of the Texas Code of Crim. Proc." Thereafter on June 25, 2013, the State filed its "Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Rule 609(f) of the Texas Rules of Evidence and Article 37.07 of the Texas Code of Criminal Procedure." It did not include notice of intent to offer evidence of the prior sexual encounter between Waguespack, Kennedy, and an unidentified female. The State filed its "First Supplemental Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Rule 609(f) of the Texas Rules of Evidence and Article 37.07 of the Texas Code of Criminal Procedure" on November 12, 2013. It included that the State may offer evidence that "[o]n or about [the] 1st day of January 2010 and on numerous occasions thereafter, the Defendant engaged in sexual competitions with Andrew Kennedy and has attempted to get females intoxicated in order to participate in sex." Voir dire was then conducted the same day that the first supplemental notice was filed. The guilt-innocence phase of Waguespack's trial began the next day, November 13, 2013.

On November 19, 2013, during the punishment phase, Andrew Rangel testified that he, Waguespack, and Kennedy had been roommates. He had not been surprised by the allegations against Waguespack. While he, Waguespack, and Kennedy were living together, Waguespack and Kennedy had had a contest to see who could "bed the most females." A couple of times, Waguespack and Kennedy "both joined in." He did see something "inappropriate" when one lady was in the house.

At that point, a hearing was conducted outside the presence of the jury, during which the following exchange occurred:

THE COURT: ….
We're outside the presence and hearing of the jury. Would you-all repeat the question you just asked so the record is clear about where we are?

[Prosecutor]: I don't remember my exact verbiage, Your Honor, but I was asking about was there a situation regarding this defendant and their other roommate, Andy, in which this witness observed interactions between the defendant, Andy, and a female in their house. I was going to go into how this defendant and his roommate would attempt to get women drunk in order to be able to do whatever they wanted, and he was a witness to that situation, which is clearly covered in Number 13 on the State's - -

[Defense Counsel]: That is absolutely not covered, Your Honor.

THE COURT: Wait a minute. Let me see you-all's list again.

….

[Defense Counsel]: Just to make sure, can we read what we're talking about just to be clear what was disclosed to me?

THE COURT: This is the State's First Supplemental Notice of Intent to Offer Evidence pursuant to Rule 404(b) and Rule 609(f) of the Texas Rules of Evidence and Article 37.07 of the Texas Code of Criminal Procedure. This was filed on November 12th. Number 13 on that list says, "On or about the 1st day of January 2010, and on numerous occasions thereafter, the defendant engaged in sexual compositions [*sic*] with Andrew Kennedy and has attempted to get females intoxicated in order to participate in sex."

[Defense Counsel]: Your Honor - -

THE COURT: First of all, let me hear the question and answer, and then I'll take your objection, [Defense Counsel].
All right. Go ahead.

Q. (BY [Prosecutor]) Andrew, so tell the judge on that night when you observed this defendant, Andy, your other roommate, as well as a female - - I believe it was in your kitchen - - tell the judge what you observed that night.

A.     Well, I had come out from my room to go outside, and they had been - - Andy had his door open - - his doors open. I saw them both embracing the lady in question. I went outside. They both came out later in their boxers, and they asked me if I had any Viagra because they couldn't perform in front of each other, and I went back inside, and she was in the kitchen, and we were talking, and they both came back in. The defendant, John, he poured a glass of - - I think it was whiskey or something like that and offered it to her. She said no, that she had already had too much to drink, and he put it to her lips and basically forced her to drink it. And at that point I was kind of concerned, but then after she finished drinking it, she told him that she wanted them both in the same night. John forcibly told her to make him hard - - well, to make - - he said, "Make us hard."

Q.     And, additionally, did the defendant make any comments to you about women and getting them drunk?

A.     Yes. I was talking to this lady that I had been involved with for a couple of months. I would take her out on dates, and she came over to my house, and I was telling them how she was coming over to watch a movie with me, and he asked me if I had gotten anywhere with her, and I said, I've kissed her on the cheek, and he said, "What you need to do is go buy alcohol and get her drunk" and then I can do anything I want with her.

THE COURT:   You're describing two different situations here?

THE WITNESS:  Yes, sir.

THE COURT:   The time frame for this incident you just described about the lady being over with your roommate and the defendant, when did that happen?

THE WITNESS:  My friend coming over and him telling me to do that, that was in probably November, December-ish.

THE COURT:  Of what year?

….

A.     … The episode in question was late 2009, and then the other episode was in, I believe, the summer of 2011.

Q, And the other episode being the threesome situation?

A. Yes, yes.

Q. So that would have been a few months before this event, this sexual assault?

A. Yeah, yeah.

THE COURT: All right. Your objection, [Defense Counsel]?

[Defense Counsel]: Your Honor, my objection is that the specific incident wasn't disclosed, but the general competition and trying to get girls drunk. It has no mention of this particular girl. The specific incident he supposedly saw doesn't include that. And second, Your Honor, we got this notice - - the amended notice. We got all the other notices other than Number 13 on that, which I believe is Number 13 that refers to - - the one that was just read into the record regarding Mr. Rangel's testimony. And, Your Honor, I object in general. This is something we got notice of the day trial started, and we've been in trial the entire week, and I haven't been given any opportunity to investigate this based on the short notice we got, and now that they are trying - - this is the second time they have got into something specifically outside of that, and I object to this witness' testimony going forward at all.

….

[Defense Counsel]: … This specific incident was not disclosed, and, Your Honor, I object on the amount of notice was not reasonable to get into anything they are talking about at this point. I just ask that this entire witness' testimony be stricken from the record and ask the jury be asked not to consider it based on the improper notice, not enough time, and also the fact that they are getting into things that are completely unrelated to the notice they actually gave me on the first day of trial.

THE COURT: It was filed on November 12th. This is November 19th.

[Prosecutor]: Yes, sir.

THE COURT: All right. The objection is overruled.

[Defense Counsel]: Your Honor, does that objection allow them to get into the specific incident of conduct?

THE COURT: I'm going to allow them to get into the testimony this witness has just testified to outside the presence of the jury.

[Defense Counsel]: Your Honor, may I have a running objection to all that testimony?

THE COURT: You may.

[Defense Counsel]: And all the testimony - - any further testimony by this witness, period.

THE COURT: What else are we going to get into?

[Prosecutor]: That's what I was going to tell you, Judge. The only other thing besides what we've just discussed that I was going to go into with this witness was the fact that at one point in time he had a friend of his that had started talking to the defendant and he told her to stay away from him. There is no specific instances of bad conduct. It was his opinion that he didn't want his friend dating this defendant.

….

[Defense Counsel]: It's not relevant either, Your Honor. His opinion about what he wants his friend to talk to is not relevant to any issues that are on the subject of this trial.

….

THE COURT: It's overruled.

[Defense Counsel]: May I ask for a running objection to that testimony as well?

THE COURT: Yes.

The jury was then brought back in, and Rangel testified accordingly.

Waguespack first complains that the trial court abused its discretion in determining that the evidence of the prior sexual encounter between himself, Kennedy,

and the unidentified female was relevant. He also argues that even if the evidence is relevant, its probative value was outweighed by the danger of unfair prejudice.

Preservation is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). It is the duty of the appellate courts to ensure that a claim is preserved for review before addressing its merits. *See id.* at 532-33. General objections do not normally preserve claims for review. *Bunton v. State*, 136 S.W.3d 355, 367 (Tex. App.—Austin 2004, pet. ref'd). In general, a claim is preserved for appellate review only if (1) the complaint was made to the trial court by a timely and specific request, objection, or motion, and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). Furthermore, the issue raised on appeal must correspond to the objection made at trial. *Dixon v. State*, 2 S.W.3d 263, 265 (Tex. Crim. App. 1998).

In this case, Waguespack did not make a relevance objection or a Rule 403 objection to the evidence of the prior sexual encounter between himself, Kennedy, and the unidentified female. Waguespack's relevance objection was made only to Rangel's testimony that he did not want his friend dating Waguespack. Waguespack has therefore failed to preserve his relevance and Rule 403 claims for review. *See* TEX. R. APP. P. 33.1(a).

Waguespack next argues that the State gave inadequate notice to the defense of the evidence of the prior sexual encounter between himself, Kennedy, and an unidentified female. Waguespack claims that tendering notice of the evidence on the

morning that trial began is the very situation article 37.07, section 3(g) seeks to prevent.

Article 37.07, section 3(a) of the Code of Criminal Procedure provides:

[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2014). But article 37.07, section 3(g) requires that "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." *Id.* art. 37.07, § 3(g). Rule 404(b) states in relevant part that the State must give "reasonable notice" "in advance of trial" of its intent to introduce evidence of extraneous conduct. TEX. R. EVID. 404(b).

We assume without deciding that the State gave inadequate notice to Waguespack of its intent to introduce the evidence of the prior sexual encounter between him, Kennedy, and an unidentified female. We therefore assume without deciding that the trial court abused its discretion during the punishment phase by admitting evidence of the prior sexual encounter between Waguespack, Kennedy, and an unidentified female. We conclude, however, that any error was harmless.

"The admission of an extraneous offense into evidence during the punishment phase when the State failed to provide notice required by statute is non-constitutional

error." *Gonzalez v. State*, 337 S.W.3d 473, 485 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Ruiz v. State*, 293 S.W.3d 685, 695 (Tex. App.—San Antonio 2009, pet. ref'd); *see Hernandez v. State*, 176 S.W.3d 821, 825 (Tex. Crim. App. 2005) (analyzing harm in failure to provide 404(b) notice under rule 44.2(b)).  An appellate court may reverse a judgment of punishment based on non-constitutional error only if that error affected the defendant's substantial rights.  TEX. R. APP. P. 44.2(b).

The purpose of article 37.07, section 3(g) is to prevent unfair surprise to the defendant and to enable him to prepare to answer the extraneous-offense evidence that the State plans to introduce at trial.  *Apolinar v. State*, 106 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2003), *aff'd on other grounds*, 155 S.W.3d 184 (Tex. Crim. App. 2005); *see Hernandez*, 176 S.W.3d at 823-24.  To determine harm in light of the purpose of article 37.07, section 3(g), we must therefore analyze whether and how the notice deficiency affected Waguespack's ability to prepare for the evidence.  *Apolinar*, 106 S.W.3d at 414; *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.).  Specifically, we examine the record to determine whether the deficient notice resulted from prosecutorial bad faith or prevented Waguespack from preparing for trial.  *Roethel*, 80 S.W.3d at 282. In determining the latter, we will look at whether Waguespack was surprised by the substance of the testimony and whether that affected his ability to prepare cross-examination or mitigating evidence.  *Id.*  "A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the extraneous-offense evidence."  *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd) (discussing rule 404(b) notice)

(citing *Hernandez*, 176 S.W.3d at 826). Error in admitting evidence in violation of a notice requirement does not have an "injurious" effect on the verdict if the defendant was not surprised by the evidence. *See Hernandez*, 176 S.W.3d at 825 (holding that evidence admitted in violation of rule 404(b)'s notice requirement is not harmful if defendant was not surprised by evidence).

In this case, Waguespack was notified about five months before trial through the State's witness list that Rangel and/or Kennedy might be called to testify. In response to the State's suggestion otherwise, Waguespack's counsel stated that an investigator had gone to Rangel's house on four separate occasions when Rangel's car was in the driveway but that the investigator never got a response and was never able to talk to Rangel. As stated above, the State then filed its "First Supplemental Notice of Intent to Offer Evidence Pursuant to Rule 404(b) and Rule 609(f) of the Texas Rules of Evidence and Article 37.07 of the Texas Code of Criminal Procedure" on November 12, 2013. It included that the State may offer evidence that "[o]n or about [the] 1st day of January 2010 and on numerous occasions thereafter, the Defendant engaged in sexual competitions with Andrew Kennedy and has attempted to get females intoxicated in order to participate in sex." Rangel, however, did not testify until seven days after the notice was given. When Waguespack objected to the evidence, the State explained, "It was new information to us."

Waguespack has not asserted how his defense strategy might have been different had the State notified him earlier of its intent to introduce the evidence. Instead, Waguespack argues in his brief that the evidence was harmful because other evidence

was such that a reasonable juror could have had a reasonable doubt as to the elements of the sexual assault and that Rangel's testimony about "a consensual sexual encounter among three adults" was "merely used to inflame the jury." But as our sister court has explained, "focusing on the degree of prejudice created by the erroneous admission of the evidence is a different harm analysis employed for violations of the rules of evidence concerning relevancy, and is not appropriate here where our inquiry is limited to the harm caused by the State's inadequate notice." *See Camacho v. State*, No. 04-06-00713-CR, 2007 WL 3270766, at *4 (Tex. App.—San Antonio Nov. 7, 2007, no pet.) (mem. op., not designated for publication) (citing *Hernandez*, 176 S.W.3d at 824-25).

Because the record does not reveal that the deficient notice was the result of prosecutorial bad faith and because the record shows that the deficient notice did not impair Waguespack's ability to prepare for the evidence or otherwise present a defense, we conclude that the deficient notice did not affect Waguespack's substantial rights. We therefore overrule Waguespack's sole issue and affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed June 18, 2015
Do not publish
[CRPM]

