

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00067-CR

Juan Gabriel **GARZA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 293rd Judicial District Court, Zavala County, Texas
Trial Court No. 13-06-03428-ZCR
Honorable Cynthia L. Muniz, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  December 23, 2015

AFFIRMED

Juan Gabriel Garza was convicted by a jury of murder and sentenced to sixty years' imprisonment.  On appeal, Garza contends: (1) the evidence is legally insufficient to support his conviction because the testimony of an accomplice witness is not corroborated; (2) trial counsel rendered ineffective assistance of counsel by failing to request a sudden passion instruction; and (3) the trial court erred in denying a motion for mistrial after a witness's testimony violated the trial court's ruling limiting the testimony.  We affirm the trial court's judgment.

**BACKGROUND**

Garza was charged with the murder of Christopher Cruz Navar. During trial, Armando Marines testified for the prosecution as an accomplice witness. The following summarizes Marines's testimony.

Marines testified he was staying with a friend in Zavala County on April 5, 2013. Around 8:00 or 9:00 p.m., Marines went to Eric Escamilla's mobile home to pick up marijuana. Escamilla's nickname is Slappy. When Marines arrived, he saw Garza pointing a gun at Navar, who had his hands raised in the air. Garza and Navar were arguing.

Slappy, Marco Martinez, Gabino Gonzalez, Monico Espinoza, Jr., and Melissa Trevino were also in the area drinking and smoking marijuana. Navar subsequently left the area, and Garza joined the others.

Sometime later, Slappy, Martinez, and Gonzalez left the mobile home to go to a club, and Garza, Espinoza, Trevino, and Marines went inside the mobile home. A short time later, the four heard a knock that sounded like someone was throwing rocks at the back of the mobile home. Garza and Espinoza walked out of the mobile home, and Marines and Trevino followed. Navar was standing behind the mobile home, and Garza pulled out the same handgun he had pointed at Navar earlier. Navar told Garza to put the handgun down and fight like a man. Garza told Navar if he did not leave by the count of ten, Garza was going to kill him. When Garza reached the count of ten, he tapped Navar on the shoulder and told him he was playing. Garza then instructed Marines, Espinoza, and Trevino to go back inside because he was just playing. Navar left, and Garza returned inside. At that time, Espinoza and Trevino also left.

After Espinoza and Trevino left, Marines saw Navar return and walk toward the front door. Marines saw Navar's approach on a camera monitor. Marines then observed Navar break the light by the front door. Garza grabbed his handgun and walked to the front door. Upon opening the

door, Garza saw Navar leaning on the door, told him to leave, and hit him on the forehead with the barrel of the handgun. This caused Navar to fall to his knees. Navar asked Garza why he was "doing this."

When Garza glanced toward Marines, Navar tackled Garza. The two men began wrestling for the handgun in the living room while Marines crouched behind a counter to avoid being shot if the handgun discharged. At some point during the struggle, Navar had the handgun pointed at Garza's chest, and Marines heard two clicks but the handgun did not fire. When Garza asked Marines to help him, Marines saw the clip to the handgun on the floor. Marines used the clip to hit Navar on the top of the head about ten times while telling him to let go of the gun. When Navar let go of the gun, Garza kicked Navar in his privates causing Navar to crouch down in pain. Garza then approached Marines who handed him the clip. Garza loaded the clip, cocked the handgun, and pointed it at Navar. Navar begged Garza not to kill him. Garza responded that he had to kill Navar because Navar tried to take Garza's life. Garza then shot Navar. After shooting Navar, Garza picked him up and threw him out the front door. Garza and Marines ran out the back door.

While Garza and Marines were running, Garza threw the handgun next to a fence. As they continued to run, Garza threw the clip. Marines called his girlfriend to pick them up, and they dropped Garza off at another location. After Marines returned to the residence where he was staying, Garza arrived and asked Marines to accompany him to get some money. After Garza obtained the money, he told Marines he was going to go somewhere far.

The next day, Marines retrieved the handgun and clip from beside the fence to clean and hide them. That afternoon, Garza called Marines and told him he was staying with a relative in Piedras Negras, Mexico. Two days later, Marines was arrested, and the handgun was seized by law enforcement.

The jury was instructed in the charge that Marines was an accomplice witness, and Garza could not be convicted based on the testimony of Marines unless his testimony was corroborated. The jury also was instructed on the law of self-defense. The jury rejected Garza's self-defense theory and convicted him of murder. Garza appeals.

### ACCOMPLICE WITNESS CORROBORATION

In his first issue, Garza contends the evidence is legally insufficient to support his conviction because Marines's testimony was not corroborated by other evidence introduced at trial. The jury was instructed in the charge that Marines was an accomplice witness, and Garza could not be convicted based on the testimony of Marines unless his testimony was corroborated.

Article 38.14 of the Texas Code of Criminal Procedure states:

> A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). We evaluate the sufficiency of corroboration evidence under the accomplice-witness rule by first eliminating the accomplice testimony from consideration and then examining the remaining evidence to see if it tends to connect the accused with the offense committed. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008); *Perez v. State*, 437 S.W.3d 610, 616 (Tex. App.—San Antonio 2014, no pet.). To satisfy the rule, the corroborating evidence is not required to prove the defendant's guilt beyond a reasonable doubt by itself. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. Instead, the corroborating evidence "must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect the accused to the offense." *Malone*, 253 S.W.3d at 257 (internal citations omitted); *see also Perez*, 437 S.W.3d at 616. No set amount of evidence is required to satisfy the accomplice-witness rule,

and each case is judged on its own facts. *Malone*, 253 S.W.3d at 257; *Perez*, 437 S.W.3d at 616. "[C]ircumstances that are apparently insignificant may constitute sufficient evidence of corroboration." *Malone*, 253 S.W.3d at 257. A defendant's mere presence at the scene of the crime, however, is insufficient to corroborate accomplice testimony. *Id.*

Excluding Marines's testimony, the following evidence was introduced that tended to connect Garza to the crime:

> (1) Garza lived at the mobile home where Navar was murdered;

> (2) a black gun case for a .45 caliber Smith and Wesson handgun, which was the handgun identified as the murder weapon, was located on top of Garza's bed in the mobile home, and a .45 caliber cartridge case that was fired from the handgun also was located in Garza's bedroom;

> (3) a trail of blood led from the living room of the mobile home into Garza's bedroom;

> (4) Garza fled to Mexico after the murder;

> (5) Abel Guadian testified Garza pulled out a handgun that resembled the murder weapon a few days before the murder while Guadian was visiting the mobile home where Navar was murdered;

> (6) Melissa Trevino was present at the mobile home with Garza and Marines on the night Navar was murdered and witnessed a confrontation between Garza and Navar in which Garza pulled a handgun and asked Navar to leave;

> (7) Monico Espinoza, Jr., Trevino's boyfriend, also was present at the mobile home with Garza and Marines on the night Navar was murdered and stated Garza told Navar to leave several times; however, Espinoza denied telling the investigators that Garza pulled a gun or that Garza did not like Navar because Navar was dating Garza's ex-girlfriend; and

> (8) Ranger Randy Garcia, the lead investigator who interviewed Espinoza, testified Espinoza stated he saw Garza pull out a handgun on the night of the murder and tell Navar to leave and that Garza did not like Navar because Navar was dating Garza's ex-girlfriend.

We hold the foregoing evidence tends to connect Garza with the murder. *See Smith v. State*, 332 S.W.3d 425, 442-43 (Tex. Crim. App. 2011) (stating proof of motive and that defendant

was at or near scene of crime at or about time of its commission, when coupled with other suspicious circumstances, may furnish sufficient corroboration); *Hernandez v. State*, 939 S.W.2d 173, 178 (Tex. Crim. App. 1997) (stating proof connecting defendant to a weapon similar to that used in the offense is a circumstance to consider in determining sufficiency of corroborating evidence); *Smith v. State*, 436 S.W.3d 353, 370 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (holding sufficient corroboration shown by evidence of flight, connection to weapon, and presence in the company of the accomplice at or near the place of the crime); *Gonzalez v. State*, 115 S.W.3d 278, 283 (Tex. App.—Corpus Christi 2003, pet. ref'd) (stating evidence of flight considered corroborating evidence). Therefore, Garza's first issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue, Garza contends counsel rendered ineffective assistance of counsel by failing to request an instruction on sudden passion during the punishment phase of trial.

To prevail on a claim of ineffective assistance of counsel, the defendant must show: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "To show deficient performance, the defendant must prove by a preponderance of the evidence that his counsel's representation fell below the standard of professional norms." *Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007). "To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 348. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

We "indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id*. at 689. "To defeat the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record

must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) (internal citations omitted). "When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court, [and] [a]n appellate court will not speculate about the reasons underlying defense counsel's decisions." *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). "If the record is silent as to the reasoning behind counsel's actions, the presumption of effectiveness is sufficient to deny relief." *Ruiz v. State*, 293 S.W.3d 685, 691 (Tex. App.—San Antonio 2009, pet. ref'd). The presumption prevails because "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

At the punishment stage of trial, a defendant who is found guilty of murder is allowed to raise the issue of whether he "caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "'The defendant has the burden of production and persuasion with respect to the issue of sudden passion.'" *Beltran v. State*, No. PD-1076-14, 2015 WL 5955015, at *3 (Tex. Crim. App. Oct. 14, 2015) (quoting *Wooten v. State*, 400 S.W.3d 601, 604-05 (Tex. Crim. App. 2013)). "To justify a jury instruction on the issue of sudden passion at the punishment phase, the record must at least minimally support an inference: 1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; 2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; 3) that he committed the

murder before regaining his capacity for cool reflection; and 4) that a causal connection existed between the provocation, passion, and homicide." *Id.*

In this case, the record is silent regarding the reason defense counsel did not request a sudden passion instruction. During the guilt-innocence phase of trial, the jury rejected Garza's self-defense theory. Although "sudden passion and self-defense are not mutually exclusive," *id.* at *4, "except in rare instances, when the State's evidence is sufficient to overcome a claim of self-defense, it will also be sufficient to show the absence of sudden passion." *Chavez v. State*, 6 S.W.3d 56, 65 (Tex. App.—San Antonio 1999, pet. ref'd) (internal citations omitted). Given Garza's burden of production and persuasion with regard to the four elements Garza was required to establish to justify a sudden passion instruction, defense counsel might have believed the evidence was not sufficient to support an inference on each element. Under these circumstances, we hold defense counsel's failure to request a sudden passion instruction is not sufficiently outrageous to denounce his representation as ineffective in the absence of an opportunity to explain his reasons. *See Goodspeed*, 187 S.W.3d at 392; *Rylander*, 101 S.W.3d at 111; *Rios v. State*, 990 S.W.3d 382, 386 (Tex. App.—Amarillo 1999, no pet.) ("In light of the absence of proof as to trial counsel's reasons for or strategy in not requesting the sudden passion mitigating instruction, we will not speculate on trial counsel's strategy, mental processes, or reasons for not requesting the instruction.") Accordingly, Garza's second issue is overruled.

### DENIAL OF MISTRIAL

In his final issue, Garza contends the trial court erred in denying his motion for a mistrial after a witness violated the trial court's ruling limiting his testimony. Abel Guadian, the witness in question, testified about his encounter with Garza three days before the murder during which Garza pulled out a .45 caliber handgun which is the same type of handgun used in Navar's murder.

Although the trial court ruled Guadian could testify about Garza pulling out the handgun, Guadian

was not permitted to testify that Garza shot in the direction of Guadian's feet.

During the motion in limine, the trial court ruled as follows:

> [Defense Counsel]: Your Honor, just to clarify, on the motion in limine regarding the prior bad acts, will the State be allowed — I know the State can introduce the acts on that day, April 5th.
> Will the State be, after all, be allowed to introduce prior bad acts prior to that?
> For example, on the Wednesday before, because the alleged incident happened on a Friday. So there was an incident about a Wednesday before that. They are bringing a witness in regarding possession of the gun and that my client shot, fired the weapon. I just wanted to clarify, will they be allowed to introduce that, as well?
> [Prosecutor]: The Court has ruled on that. He's our witness to put the gun in possession and control of the defendant. I think the Court already told us what we could or could not ask.
> [Defense Counsel]: In all fairness, your Honor, the Court did state that you would tell us on the day of opening statements.
> THE COURT: No. They will be able to bring him in. But not the fact that he shot at him.
> [Defense Counsel]: So any other facts about bad acts will not be allowed, just to show possession of the gun that day?
> THE COURT: Yes.
> ***
> [Defense Counsel]: Your Honor, in reference to these 404(b) notices that I received, I'm asking that this Honorable Court rule on our motion in limine regarding prior bad acts, prior convictions, any notice. So I would like to go through each and every one and just get clarification or ruling from the Court.
> For example, with regards to paragraph 1, it talks about my client pulling out a gun, handgun in front of Able Guadian and shooting in the direction of his feet.
> It's my understanding that the State is going to be able to — is going to be able to bring in testimony that April 3rd, which was the Wednesday before this alleged incident occurred, that Abel Guadian did see my client pull out a handgun, but that they are not going to be able to get into shooting in the direction of the feet of Abel Guadian and pointing to the head of Abel Guadian. That's my understanding.
> THE COURT: That's correct.

During his testimony, Guadian first testified that a few days before Navar's murder, Garza

pulled out a handgun while Guadian was visiting the mobile home where the murder occurred.

Guadian asked Garza if he could see the gun. Guadian removed the magazine from the gun and

asked Garza why he needed the gun. Guadian testified the gun was "[m]aybe a .45." Sometime later, Guadian asked Garza why he was staring at him, and Garza said, "I just don't like you, you know." Guadian then testified as follows:

> Q      Who said he just didn't like you?
> A      He did.
>               [Defense Counsel]:    Objection.
> Q      (By Prosecutor)  Who did he say that to?
> A      To me.
> Q      Were you having any problems or difficulties with him when you said that?
> A      No.  I just asked him.  Because he was sitting across the room, and I asked him, "Hey what's the big idea?  You know, got something with me?"
> Q      Did anything happen after that?
> A      Yeah.  I guess he asked everyone to leave.  And I guess we went outside, and I don't know —
>               [Defense Counsel]:    I object, your Honor.  May we approach?
>               THE COURT:  Yes
> (*At the Bench*)
>               [Defense Counsel]: Judge, I just want to make sure that they instructed their client in regards to the motion in limine, how this Honorable Court has ruled that they are not supposed to get into some certain testimony.  I anticipate that's going to happen.
> (*End bench conference*)
> Q      (By Prosecutor)  Without going into exactly what happened, did you see the gun again that night?
> A      Yes, I did.
> Q      Who had the gun when you saw it a second time?
> A      [Garza] did.
> Q      Where did this happen?
> A      It was outside.
> Q      Who all was there at that time?
> A      Chris [Navar] was outside.  I guess Monico [Espinoza] and his girl friend [sic] were outside and several other people.
> Q      That second time did you again handle the firearm?
> A      No.  I grabbed his hand because he shot through the ground.
>               [Defense Counsel]: Objection, your Honor.
> Q      (By Prosecutor)  Did you handle the gun again?
> A      Oh, no.
>               [Defense Counsel]:    Your Honor, I'm asking that this Honorable Court strike that from the record and instruct the jury to disregard the testimony.
>               THE COURT:  Yes.  The jury will disregard the statement made by the witness about shooting.  And it will be stricken from the record.

- 10 -

[Defense Counsel]: Your Honor, for the record I move for a mistrial.

THE COURT: Denied.

The prosecutor then asked if Guadian was contacted by law enforcement after Navar's murder. Guadian stated he was contacted and provided a statement. The prosecutor then passed Guadian as a witness.

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "A prompt instruction to disregard will usually cure any prejudice resulting from improper testimony regarding an extraneous offense, even if given in violation of a motion in limine." *Austin v. State*, 222 S.W.3d 801, 815 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Whether error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

Although Guadian violated the trial court's ruling prohibiting him from testifying that Garza shot the handgun, the prosecutor's question was not an attempt to circumvent the motion in limine. The prosecutor previously instructed Guadian to answer the questions "[w]ithout going into exactly what happened." In addition, the question posed to Guadian, *i.e.*, whether he handled the firearm the second time, elicited a "yes" or "no" answer. Guadian's response that he grabbed Garza's hand "because he shot through the ground" was not responsive to the question posed by the prosecutor. Under the facts of this case, the trial court did not abuse its discretion in denying the mistrial because the trial court's immediate instruction for the jury to disregard the answer was sufficient to cure any prejudice resulting from the improper testimony, and the improper testimony was not "highly prejudicial" or "incurable." *See Ocon*, 284 S.W.3d at 884; *Herrero v. State*, 124 S.W.3d 827, 836-37 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding trial court did not

abuse its discretion in denying motion for mistrial because curative instruction was sufficient to withdraw impression produced in minds of the jury by witness improperly interjecting an extraneous offense in violation of motion in limine).  Therefore, Garza's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH