

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-14-00168-CR

---

LYNDON ANDERSON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 11-F-0921-102

---

Before Morriss, C.J., Moseley and Carter,* JJ.
Opinion by Justice Carter

---

*Jack Carter, Justice, Retired, Sitting by Assignment

# O P I N I O N

Lyndon Anderson appeals his conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011). Anderson claims error in (1) the admission of photographs showing Anderson at the crime scene; (2) allowing a witness to testify about knowing Anderson prior to the robbery; and (3) allowing the witness to identify Anderson on surveillance video that was recorded during the crime. Further, Anderson claims that the evidence is insufficient to support his conviction. After reviewing the record and the applicable law, we affirm the trial court's judgment.

## I.    Facts

On August 20, 2011, Charity Haworth was working at Mo Money, a check-cashing and payday advance business on State Line Avenue in Texarkana, Texas. A man came in the store four times over the span of a few hours to get information about a loan. On the man's fourth and final visit, he threw himself against the door separating the lobby from Haworth's office. According to Haworth, the man displayed a pistol and demanded cash. A surveillance video recording from the store confirms Haworth's description of events. The robber can be seen leaving the store with a handgun.

Haworth described the robber to police, and she was then shown multiple mug shots. When presented with a photographic array of six men sharing similar characteristics to those she described, Haworth identified another man, though Anderson's photograph was included in the array. When an image from the surveillance video was printed in the local newspaper, however,

two Arkansas[1] law enforcement officers, Robert Gentry and Scott Bradshaw, identified Anderson as the robber. Gentry and Bradshaw watched the surveillance video and confirmed their identification of Anderson as the robber.

## II.    Authentication of Photographs

Anderson's first point of error complains of the admission of photographs into evidence. By stipulation and without objection, the State introduced a surveillance video recorded by a camera at Mo Money. The State sought to introduce several photographs and represented to the trial court that they were still images captured from the surveillance video. Anderson objected that the photographs had not been properly authenticated. Authentication of exhibits is governed by Rule 901 of the Texas Rules of Evidence, which states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). Anderson argues on appeal that State's Exhibits 3, 4, 5, 6, and 7, still images purportedly captured from the Mo Money surveillance video, were not sufficiently authenticated to meet Rule 901's requirements.

At trial, Anderson stipulated to the admission of Exhibit 2, the surveillance video from the Mo Money business. The State then offered Exhibits 3 through 7, which the State described as "photographs which are still shots from the video, simply excerpted from the video, previously marked for identification as State's 3 through 7 . . . ." Anderson objected, stating that he believed

---

[1]Mo Money is on State Line Avenue, a boulevard running through Texarkana and marking the border between Texas and Arkansas.

3

"a foundation would have to be laid through the person who took those from this video to make sure nothing has been done to them, to see what the process was." The trial court took the matter under advisement and viewed the video and the still photographs. The trial court then announced, "[I]t's obvious these photographs are from the video, and the video has been admitted. . . . I think these will be helpful to the jury to identify whoever did do the robbery. So, with that, I'm going to overrule your objection . . . . "

All preliminary questions concerning the admissibility of evidence shall be determined by the court. TEX. R. EVID. 104. In this instance, the trial court had to decide if sufficient evidence supported the State's representation that the photographs were taken from the surveillance video. Rule 901(b) provides several illustrations of methods of authentication that conform to the Rule's requirements. One such method of authentication is detailed in Rule 901(b)(3), which states that evidence can be authenticated through "[c]omparison by the trier of fact or by an expert witness with specimens which have been found by the court to be genuine." TEX. R. EVID. 901(b)(3); *see United States v. Safavian*, 435 F.Supp.2d 36, 41 (D.D.C. 2006) (proper to allow jury to compare unauthenticated emails with known emails to resolve authenticity issue).[2] In this case, the parties stipulated to the genuineness of the surveillance video when they stipulated to its admissibility. The trial court accepted that stipulation when it received the video into evidence. Thus, there is no question regarding the genuineness of the video. The ultimate comparison was to be done by the jury, and the preliminary question to be resolved by the trial court was simply whether the still

---

[2]*United States v. Goodman*, 547 F.2d 778, 783 (3d Cir. 1976) (per curiam), a case decided before the Rules of Evidence became effective, but to which the court cited, held that it is only necessary to demonstrate a prima facie case and that the evidence should go to the jury, which ultimately determines the factual issue of authenticity. The only requirement is that there has been substantial evidence from which the jury could infer that the exhibit was authentic.

4

photographs were similar enough to the video-recorded images to permit the jury to reasonably infer that the still photographs are authentic. Stated differently, "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

In *Logan v. State*, 48 S.W.3d 296, 301 (Tex. App.—Texarkana 2001), *aff'd*, 89 S.W.3d 619 (Tex. Crim. App. 2002), we found that the jury could have compared the signatures on inventory forms with other signed documents admitted without objection to determine if the inventory forms were authentic. Similarly, in *Ex parte Watson*, 606 S.W.2d 902, 905 (Tex. Crim. App. 1980), the jury could have determined the authenticity of a letter purportedly written by Watson by comparing that letter with another of his admittedly genuine writings in evidence.

Here, the jury was presented with the video, which was admitted by stipulation, and the photographs, and the jury determined that the photographs were the same images contained in the video. The record supports a finding that the still photographs were sufficiently authenticated.

## III.    Officer's Prior Knowledge of Anderson

In his second point of error, Anderson claims that the trial court erred in admitting the testimony of Officer Bradshaw. Bradshaw testified that he had known Anderson for several years and that he had engaged in several conversations with him, some in an office and some in field settings. Based on these contacts, Bradshaw testified that the robber seen in the surveillance video was Anderson. Anderson contends that Bradshaw's testimony concerning his several prior

5

encounters with Anderson amounted to testimony that Anderson had committed extraneous bad acts or offenses.

We begin with the established proposition that an accused can only be tried for the instant alleged offense, not for being a criminal in general. *See Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008). Evidence of extraneous bad acts or crimes may, though, be admissible to prove such things as motive, opportunity, intent, or preparation, among others. *See* TEX. R. EVID. 404(b). That said, we find that Bradshaw did not testify to any extraneous crimes or bad acts committed by Anderson. While Bradshaw's testimony that he had known Anderson for several years and had engaged in several conversations with him may have implied to the jury that these contacts were in Bradshaw's capacity as a law enforcement officer, this does not rise to the level of evidence of extraneous bad acts or crimes. Bradshaw's testimony was relevant to supply information as to how he was able to identify Anderson as the robber in the surveillance video. Anderson did not and could not identify any specific bad act or crime attributed to him by Bradshaw. Further, Anderson has directed us to no authority precluding Bradshaw's testimony.

We further note that Officer Gentry also testified that he was very familiar with Anderson, having had more than one conversation with him and having personally met him. Gentry testified that when he saw a photograph of the robber in the newspaper, he identified the robber as Anderson. Anderson lodged no objection to Gentry's testimony. "[Q]uestions regarding the admission of evidence are rendered moot if the same evidence is elsewhere introduced without objection; any error in admitting evidence over a proper objection is harmless if the same evidence is subsequently admitted without objection." *Chamberlain v. State*, 998 S.W.2d 230, 235 (Tex.

6

Crim. App. 1999). We find no error in the admission of Bradshaw's testimony, and we overrule Anderson's second point of error.

## IV. Sufficiency of the Evidence

Pointing to Haworth's inability to identify him as the robber, Anderson claims the evidence is insufficient to support his conviction. We disagree.

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found beyond a reasonable doubt that Anderson was guilty of aggravated robbery. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

7

Here, the State had to prove (1) that Anderson committed theft of property with the intent to obtain or maintain control of that property; (2) that in the course of this theft, Anderson intentionally or knowingly threatened Haworth or placed her in fear of imminent bodily injury or death; and (3) that in the course of this theft, Anderson used or exhibited a deadly weapon. *See* TEX. PENAL CODE ANN. § 29.03.

As described above, when presented with a photographic array that included Anderson's photograph, Haworth identified a different person as the robber, and she did not identify Anderson at trial. Police officers who responded to the robbery described Haworth as "visibly shaken" and "traumatized" and stated that she had "a hard time explaining . . . the details of the situation." The operator who took Haworth's 9-1-1 call said Haworth's "voice sounded real shaky." In her trial testimony, Haworth said she was afraid for her life and indicated that all she saw was "[j]ust a big black gun pointed at my face." [3] According to Haworth, the robber demanded money, and she gave him all the money in her till—between $800.00 and $900.00.

The fact that Haworth did not identify Anderson in the photographic lineup is a factor for the jury to consider and resolve. The jury had several other items of evidence to help resolve whether Anderson committed this offense. Haworth described the robber as "a black male" wearing a "black shirt with red designs, red shorts with white shoes," and a red hat with "NY" on it. This description is borne out by the surveillance video. Haworth also told police that the robber arrived and left in an older-model white Honda with a sunroof. She estimated the model year of the Honda as late 1990s or early 2000s, and she noted that the vehicle did not have a front license

---

[3] A firearm is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2014).

plate. In the surveillance video, the robber is seen arriving and leaving, each time he visited the business, in a white compact car.

Although Haworth could not identify Anderson,[4] two Arkansas law enforcement officers did, based on their prior contacts with him and after viewing the security camera footage from the robbery. The quality of the video recording is good. It clearly shows the robber coming into and leaving Mo Money four different times. Notwithstanding Haworth's inability to identify Anderson as the robber, the jury could watch the video recording and observe Anderson in the courtroom. Regarding the car used by the robber, the State produced testimony from Ruth Leeper, a friend of Anderson's, who said that she loaned Anderson her white Honda Accord and that he had the car about two weeks, including on August 20, 2011, the date of the robbery. Leeper stated that Anderson returned the car late one night. She continued,

> He came to my house in the middle of the night, woke me up, and told me that he was returning the car, that he parked it behind my house, that he did something stupid, that he didn't want to get into it because he didn't want me involved, and that he had to leave town.

Considered in the light most favorable to the jury's verdict, a rational jury could have found, beyond a reasonable doubt, the elements of aggravated robbery. We find the evidence was sufficient to support the jury's verdict and overrule Anderson's third point of error.

---

[4]As for the complainant's inability to identify her robber, see *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (holding circumstantial evidence sufficient for jury to infer Earls was the perpetrator when witness could not positively identify him).

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     March 23, 2015
Date Decided:       April 9, 2015

Publish