

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00131-CR

---

ANTHONY J. WHITE                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1356983D

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury convicted Appellant Anthony J. White of the offense of robbery causing bodily injury. *See* Tex. Penal Code Ann. § 29.02(a)(1) (West 2011). After White pleaded true to the habitual offender notice, the trial court sentenced him to forty years' confinement. In two issues, White argues that the trial court

---

[1]*See* Tex. R. App. P. 47.4.

erred by denying his challenges for cause to four potential jurors and that the evidence is insufficient to support his conviction. We will affirm.

## II. FACTUAL BACKGROUND

On the night of January 24, 2014, Joann Ayo was walking from a bus stop toward her home after finishing work. While she was walking, she noticed a van driving with its lights off. The van passed her, made a U-turn, and then passed her a second time. The van then stopped, and a man exited and started running toward her. As the man got closer, he put a hood over his head. When the man reached Ayo, he attempted to grab the purse out of her hands, and told her, "Give it to me, give it to me." As the two were struggling for control of Ayo's purse, the man pushed Ayo to the ground. Ayo landed on her right hand, causing it to be injured. The man eventually was able to wrest the purse away from Ayo, and he went back to the van and drove away.

Ayo called 911 immediately after the man left, placing the call at 10:38 p.m. Ayo described the robber as a black male with short hair in his twenties or thirties. She told authorities that he was wearing a black hoodie and black pants. She described the van he was driving as light gray or beige.[2] At trial, Ayo described the man as being "tall" but also stated that he was probably "[f]ive-six, five-seven, something like that."

---

[2]At trial, Ayo testified that the van was "either tan or gray."

2

Officer Alec Wiseman, of the Fort Worth Police Department, was dispatched to the robbery call, and he and his partner began canvassing the area around the crime scene looking for the suspect's vehicle. At approximately 10:50 p.m.—twelve minutes after Ayo had called 911—Officer Wiseman observed a van approximately half a mile from where the robbery took place that matched the general description of the suspect's vehicle, and he observed a black male— later identified as White—sitting in the driver's seat of the van.

As Officer Wiseman approached the van, he saw White reaching down toward the rear floorboard. Officer Wiseman shined his flashlight toward the area White was reaching and saw cash lying on the floorboard and a glove partially covering the cash. Officer Wiseman also saw a purse—later identified as Ayo's stolen purse—on the console between the driver's seat and the passenger's seat. White told Officer Wiseman that he had been looking through dumpsters in the area and had found Ayo's purse in one of the dumpsters.[3] Ayo's purse was ultimately recovered, along with $66.00 in cash.

When apprehended, White was wearing a blue hoodie and black pants. He was also wearing a black do-rag that covered his long black hair. The van White was driving was—after being viewed in good lighting—determined to be silver, although Officer Wiseman testified that the van was "very dirty" and that he

---

[3]Officer Wiseman testified that White's van was parked "pretty far away" from any dumpsters.

believed it was tan when he first approached it. White was thirty-seven at the time of his arrest and measured five feet, nine inches tall.

The day after the robbery, Detective Andre Smith, who was leading the investigation into the robbery, showed Ayo a photo lineup containing photos of White and five other individuals. Ayo could not identify any of the six individuals in the lineup as the robber. When showed White's photo and asked whether he was the man who robbed her, Ayo responded, "That's not him, unless he had a haircut." She later testified that she had not expected to recognize the robber in the lineup because the hood had obscured his face and because it was dark outside at the time of the robbery.

## III. WHITE'S CHALLENGES FOR CAUSE

In his first issue, White argues that the trial court erred by denying his challenges for cause to four potential jurors.

### A. Standard of Review

When reviewing a trial court's decision to deny a challenge for cause, we look to the entire record to determine whether there is sufficient evidence to support the trial court's ruling and reverse only for a clear abuse of discretion. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 128 (2011); *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Because the trial judge is in the best position to evaluate a prospective juror's demeanor and responses, we review a trial court's ruling on a challenge for cause with considerable deference. *Gardner v. State*, 306 S.W.3d 274, 295–96

4

(Tex. Crim. App. 2009), *cert. denied*, 562 U.S. 850 (2010); *Burks v. State*, 876 S.W.2d 877, 893 (Tex. Crim. App. 1994). We accord particular deference to a trial court's decision when a prospective juror's answers concerning his ability to follow the law are vacillating, equivocating, ambiguous, unclear, or contradictory. *Gardner*, 306 S.W.3d at 295; *Moore v. State*, 999 S.W.2d 385, 400, 407 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000).

## B. Challenges to Potential Jurors 10 and 14

During voir dire, White's counsel asked the jury panel to rank the believability of police witnesses on a one-to-five scale. White's counsel told the panel:

> So what we're going to do is you're going to give me a number, one to five. And one is, I don't believe anything police officers say, they all lie, I can't trust them, don't believe them at all . . . . And [this is] what number five is. You know, I—I know a lot of police officers, even if I don't know them, I just think that they're the most trustworthy people, and you know, if they say something, it's going to be the truth. And then three would just kind of be a lot of them lie, a lot of them don't lie. And then two and four are kind of close to each end.

Potential jurors 10 and 14—like many other members on the panel—gave an answer of "four."[4] White requested that the trial court strike potential jurors 10

---

[4]Each of the forty-five members of the panel were asked to give a number based on the one-to-five scale proposed by White's counsel. Two potential jurors answered the question "five," sixteen answered "four," twenty-five answered "three," one answered "2.5," and one answered "two."

and 14 for cause based on their bias in favor of police officers.[5] The trial court denied that request. White then used two of his peremptory challenges on potential jurors 10 and 14, exhausted all of his peremptory challenges, identified jurors that he would have struck, and requested additional strikes. As the trial court denied his request for additional strikes and objectionable jurors sat on the jury, White has preserved his complaint for review. *See Davis*, 329 S.W.3d at 807 (setting out steps a party must take in order to preserve error for a trial court's denial of a challenge for cause).[6]

White points us to *Hernandez v. State* to support his contention that the trial court erred by not striking potential jurors 10 and 14 for cause. 563 S.W.2d 947 (Tex. Crim. App. 1978). In that case, the defense attorney asked a potential juror if she believed that police officers would not lie on the witness stand. *Id.* at 950. The following exchange occurred:

Q: I am not talking about making a mistake, I am talking about telling a knowing willing falsehood from the witness stand.

A: I don't think a police officer would tell a falsehood from the witness stand.

Q: Under any circumstances?

A: No, I don't.

---

[5]*See* Tex. Code Crim. Proc. Ann. art. 35.16(a)(9) (West 2006) (providing that a juror may be challenged for cause when he "has a bias or prejudice in favor or against the defendant").

[6]The State acknowledges that White has preserved his complaint for appeal.

6

*Id.* The court of criminal appeals held that the potential juror was challengeable for cause because she could not impartially judge the credibility of police officers. *Id.*

In *Jones v. State*, the court of criminal appeals expounded on its opinion in *Hernandez*. 982 S.W.2d 386, 389 (Tex. Crim. App. 1998), *cert. denied*, 528 U.S. 985 (1999). The court stated:

> In [*Hernandez*], the veniremember stated that she would *always* believe police officers who testified at trial. Our holding in *Hernandez*, however, must not be interpreted to mean that a veniremember is challengeable for cause simply because he would be more *skeptical* of a certain category of witness than of witnesses generally. What we meant in *Hernandez* was that litigants are entitled to jurors who will be genuinely open-minded and persuadable, with no *extreme or absolute* positions regarding the credibility of any witness. We could not have meant that jurors must be completely impartial and free of any trace of skepticism toward any category of witness. Complete impartiality cannot be realized as long as human beings are called upon to be jurors. No person sitting as a juror can completely remove his own experiences, beliefs, and values, however hard he may try.

*Id.*

Echoing the sentiment in *Jones*, Texas courts have repeatedly held that potential jurors are not challengeable for cause when they would slightly tend to believe police officers more than others; rather, to be challengeable for cause, potential jurors must have extreme or absolute positions with respect to the credibility of police officers. *See, e.g.*, *Feldman*, 71 S.W.3d at 747 ("Appellant is entitled to jurors . . . with no extreme or absolute positions regarding the credibility of any witness . . . . That Henry was simply more or less skeptical of a

7

certain category of witness did not make him subject to a challenge for cause."); *Ladd v. State*, 3 S.W.3d 547, 559–60 (Tex. Crim. App. 1999) ("Veniremen are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility . . . . Thus, McKay was not challengeable for cause because he would tend to believe policemen and doctors slightly more than others."), *cert. denied*, 529 U.S. 1070 (2000); *Simpson v. State*, No. 01-12-00380-CR, 2014 WL 2767126, at *4 (Tex. App.—Houston [1st Dist.] June 17, 2014, pet. ref'd) (mem. op., not designated for publication) ("a potential juror who says that he would tend to believe a police officer more than another witness may serve on a jury").

Here, neither potential juror 10 nor potential juror 14 was at the extreme end of the range proposed by White's trial counsel. Indeed, potential juror 14 qualified his answer: "I guess four, but I think with the recent events and media attention, I would be kind of less trusting of police officers than I have been." Potential juror 14 went on to say, "I thought [police officers would] be more credible than a person—you know, a witness that saw something. They may also be not truthful."

As potential jurors 10 and 14 did not demonstrate extreme or absolute positions regarding the credibility of police officers, but instead rated them a "four"—i.e., a number between a neutral "three" and an absolute "five"—the trial court did not abuse its discretion by denying White's challenges for cause with

8

respect to them.  *See Feldman*, 71 S.W.3d at 747; *Ladd*, 3 S.W.3d at 559–60; *Jones*, 982 S.W.2d at 389; *Simpson*, 2014 WL 2767126, at *4.

## C.  Challenges to Potential Jurors 17 and 31

White also appeals from the trial court's denial of his challenges for cause to potential jurors 17 and 31.[7]  White argues that potential jurors 17 and 31 indicated that they would hold the State to a burden less than proof beyond a reasonable doubt, and accordingly, they should have been struck for cause.[8]

The following exchange took place between White's counsel and potential juror 17:

Q:  So what you're saying is that if the Prosecution proves their case maybe to the level of preponderance of the evidence where you think it's more likely than not—

A:  Right.

Q:  —that he's guilty but in your mind you're not convinced beyond a reasonable doubt of his guilt, you would return a verdict of guilty?

A:  I would.

. . .

---

[7]White has preserved this complaint for review, as he used two of his peremptory challenges on potential jurors 17 and 31, exhausted all of his peremptory challenges, identified jurors that he would have struck, and requested additional strikes.  *See Davis*, 329 S.W.3d at 807.

[8]*See* Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (providing that the defense may challenge a juror for cause when he "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely").

9

Q: So what you're saying is that if you think that somebody is guilty but you're not to that high burden that we put in our legal system, that beyond a reasonable doubt—

A: Right.

Q: —you would want to return a verdict of guilty?

A: Yes.

White's attorney then asked if there were any other potential jurors who agreed with potential juror 17. Potential juror 31 indicated that she agreed with potential juror 17. White's counsel then asked potential juror 31, "So if you were less sure than beyond a reasonable doubt but you're thinking that he probably did it, you would return a verdict of guilty?" Potential juror 31 answered, "Yes."

Potential jurors 17 and 31 were later brought in for additional questions. *See Feldman*, 71 S.W.3d at 744 ("Before a prospective juror can be excused for cause [for bias against the law applicable to the case], the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views."). The following exchange then took place between potential juror 17 and the trial court:

Q: And the law is we don't find people guilty unless the State's proven the case beyond a reasonable doubt.

A: Okay. And that's attainable.

Q: And if they haven't proven it, are you still going to find that person guilty?

A: No. I'm going to listen to the evidence that's presented.

The following exchange then took place between potential juror 31 and the trial court:

Q: If you haven't—if the case hasn't been proven beyond a reasonable doubt and the Court instructs you that you must have proof beyond a reasonable doubt, and that's defined by you—

A: Right.

Q: —but in your mind it hasn't been proven beyond a reasonable doubt, are you still saying that since some evidence was produced, you're going to find the Defendant guilty?

A: My answer's no.

Q: Okay. So you understand the concept of a law is that the State must prove their case, each and every element, beyond a reasonable doubt?

A: I do.

Q: And if it fails to do so and that is the circumstance, what would be your conclusion under that scenario?

A: Not guilty.

While potential jurors 17 and 31 made some initial statements indicating that they would hold the State to a burden less than proof beyond a reasonable doubt, they later agreed that they would find White not guilty if the State failed to prove guilt beyond a reasonable doubt.[9] Based on our review of the entire voir

---

[9]Potential jurors 17 and 31 had earlier apparently indicated that they would hold the State to its required burden of proof when White's attorney globally posed the following question to the jury panel:

Q: And the burden of proof. Like we said, unless you're convinced of guilt beyond a reasonable doubt, what is your

11

dire, we hold that the trial court did not abuse its discretion by denying White's challenges for cause to potential jurors 17 and 31. *See Gardner*, 306 S.W.3d at 295 (holding that when a potential juror vacillates or equivocates on his ability to follow the law, the reviewing court must defer to the trial court); *Moore*, 999 S.W.2d at 400 (same). We overrule White's first issue.

## IV. SUFFICIENCY OF THE EVIDENCE

In his second issue, White argues that the evidence presented at trial was insufficient to support his conviction for robbery causing bodily injury. White focuses on some of the discrepancies between Ayo's description of the robber and his own appearance on the night he was arrested, as well as the fact that she did not identify him as the robber during the photo lineup.

## A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

---

verdict going to be? I'm going to ask everybody this at one time and just have everybody answer it.

Prospective Jurors:     Not guilty.

Q:     Try again. If after hearing all the evidence you're not convinced of guilt beyond a reasonable doubt, what would your verdict be?

Prospective Jurors:     Not guilty.

12

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Dobbs*, 434 S.W.3d at 170; *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

13

## B. The Evidence is Sufficient to Support White's Conviction

Here, Ayo was injured when a robber took her purse and pushed her to the ground during the course of the robbery. White was found with Ayo's purse approximately twelve minutes after the robbery in a location approximately half a mile from where the robbery took place. The van White was driving generally matched the description of the robber's van given to authorities by Ayo, with the exception that the van White was driving was silver while Ayo described the robber's van as light gray or beige. That slight discrepancy in color can be explained by the dark lighting at the time of the robbery and the fact that White's van was "very dirty."[10]

White's appearance also generally matched the description of the robber given to authorities by Ayo. Ayo told authorities that the robber was a black male with short hair in his twenties or thirties. White is a black male, and at the time of the robbery, he was thirty-seven. While he had long hair at the time of his arrest, he was also wearing a black do-rag when apprehended. Officer Wiseman testified that when someone is wearing a do-rag it is impossible to tell how much hair that person has.[11] Ayo also told authorities that White was wearing a black

---

[10]As mentioned earlier, Officer Wiseman testified that he thought the van was tan when he first approached it.

[11]We have viewed photos taken of White in the hours following his arrest in which he is wearing the do-rag. We agree with Officer Wiseman's testimony that it is impossible to tell whether White's hair is long or short when he is wearing the do-rag, as his hair cannot be seen underneath the do-rag.

hoodie and black pants. When apprehended, White was wearing a blue hoodie and black pants. Ayo guessed that the robber was "[f]ive-six, five-seven, something like that," yet she also described him as "tall." White is five feet, nine inches.

The minor discrepancies between Ayo's description of the robber and White's appearance on the day of the robbery do not preclude White's conviction; rather, they were facts for the jury to weigh and consider. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) ("Any discrepancies in the description of appellant's clothing or appearance go to the weight and credibility of the witnesses and were before the jury for their consideration."); *Razo v. State*, No. 02-11-00161-CR, 2012 WL 3207271, at *6 (Tex. App.—Fort Worth Aug. 9, 2012, no pet.) ("It is reasonable to assume that Burk's recollection of the appearance of his assailants could be inaccurate, and such a discrepancy does not render the jury's finding improper in light of the additional evidence linking Razo to the crime.").

While Ayo was not able to identify White during the photo lineup, she testified that she did not see the robber's face. Moreover, she qualified her answer by stating, "That's not him, unless he had a haircut." The mere fact that Ayo did not identify White in the photo lineup does not preclude his conviction; instead, it too was a fact for the jury to weigh and consider. *See Livingston v. State*, 739 S.W.2d 311, 329 (Tex. Crim. App. 1987) ("The fact that a witness cannot give a positive identification of another person goes to the weight of his

15

testimony . . . ; therefore, the lack of a positive identification is a jury issue."), *cert. denied*, 487 U.S. 1210 (1988); *Anderson v. State*, 461 S.W.3d 674, 679 (Tex. App.—Texarkana 2015, no pet.) ("The fact that Haworth did not identify Anderson in the photographic lineup is a factor for the jury to consider and resolve.").

While White offered police an alternative explanation for why he was in possession of Ayo's purse—he told police he had found it while looking through dumpsters in the area—the jury was free to believe or disbelieve White's explanation. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001) (stating that it "is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories"); *Gregory v. State*, 159 S.W.3d 254, 261 (Tex. App.—Beaumont 2005, pet. ref'd) (stating that it is "within the province of the jury" to resolve competing theories of the evidence). Given that White—who matched the general description of the robber—was found twelve minutes after the robbery sitting in a van generally matching the description of the van utilized by the robber, that the van was parked half a mile from where the robbery occurred, and that White was in possession of Ayo's purse and money, the jury was free to reject White's explanation.[12]

_____

[12]To accept White's explanation, the jury would have to believe that in a twelve-minute time span another person—matching White's general description and driving a van similar to White's—robbed Ayo, drove some distance away, and discarded her purse containing cash in a dumpster and that White happened to come along, find the purse, and get back to his van located "pretty far away" from the nearest dumpster.

Considering the evidence in the light most favorable to the jury's verdict, we hold that a rational trier of fact could have found beyond a reasonable doubt that White committed the offense of robbery causing bodily injury. We thus overrule White's second issue.

## V. CONCLUSION

Having overruled White's two issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: February 4, 2016