

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00002-CR

Larry Donnell **GIBBS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2015 CRR 001320 D-1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: December 27, 2019

AFFIRMED

A jury found appellant Larry Donnell Gibbs guilty of two counts of robbery. The jury also found an enhancement allegation of a prior felony conviction to be true and assessed punishment at 47 years in prison. The trial court signed a judgment consistent with the jury's verdict. Gibbs raises five issues on appeal. We affirm the trial court's judgment.

## BACKGROUND

Gibbs was arrested and charged with committing a May 8, 2015 robbery at a Family Dollar store in Laredo. He was originally indicted for two counts of aggravated robbery, with the

indictment alleging that he had used or exhibited a deadly weapon[1] during the robbery. However, the trial court granted the State's motion to amend the indictment to remove the deadly weapon allegation, which lessened the charges against Gibbs from aggravated robbery—a first-degree felony—to robbery, which is a second-degree felony. The trial court also allowed the State to delete an enhancement paragraph alleging that Gibbs had been convicted of a 2010 Texas state jail felony.

On April 29, 2016, the State filed a Notice of Intent to Use Extraneous Offenses and Prior Convictions, which indicated that it intended to introduce evidence of Gibbs's previous robbery conviction in Shelby County, Tennessee during the penalty phase of the trial. On May 11, 2016, the State filed an amended notice of its intent to introduce evidence of the Tennessee robbery conviction during the penalty phase. The State also moved to amend the indictment to include an enhancement paragraph describing the Tennessee robbery conviction, but the appellate record does not contain an order granting that amendment.

From May 23–27, 2016, Gibbs was tried before a jury on two counts of robbery. A surveillance video introduced by the State at trial showed an African-American man wearing a light-colored, long-sleeved shirt, dark pants, gray shoes, and a white baseball cap with a sticker on the brim entering the Family Dollar at 1:22 p.m. on the day of the robbery and walking through the store for a few minutes before disappearing. At 10:05 p.m., after the store had closed, the same man appeared again in the surveillance footage, crouching in the aisles as he approached the front door and cash registers. At that point, the man's face was covered with a bandana. The surveillance cameras captured the robbery in its entirety from multiple angles, but none of the footage showed a clear picture of the perpetrator's face.

---

[1] The original indictment identified the deadly weapon as a pellet gun.

Melissa Castillo, who was working at the Family Dollar on May 8, 2015, testified the store closed at 10:00 p.m. that night. Castillo checked the aisles to make sure the store was empty before she locked the front doors, but she did not check the back warehouse. Castillo believed she and her coworker, Cindy Ayala, were the only people in the store at that point. After Castillo locked the doors and while she was counting the money in the cash register, she saw a man walk toward her from the back of the store. The man was wearing jeans, a long-sleeved blue shirt, a white baseball cap, and had a bandana covering most of his face. The man, who carried a black handgun, told Castillo to open the register. After he took the money from the register, he forced Castillo to open the store's safe and told Ayala to kneel on the floor nearby. When the safe did not open immediately due to a time-delay mechanism, the man hit Castillo on the head, then made her unlock the front doors. When the safe opened, Castillo gave the man the money inside. He then forced Castillo and Ayala into the restrooms in the back of the store and blocked them inside with a shelf. Castillo testified that she and Ayala freed themselves and called 911.

Although the man had a bandana covering most of his face, Castillo testified that she could identify him based on his hair and the side of his face. Ayala testified that she "g[o]t a good look at his eyes" and that she "[m]ore or less" still remembered what his eyes looked like at the time of trial. Castillo and Ayala both described the man who robbed them as African-American, in his late twenties or early thirties, approximately six feet tall, and between 220 and 240 pounds.

Investigator Margarita Govea with the Laredo Police Department testified that during her investigation into the Family Dollar robbery, the store's manager showed her a piece of plywood with shoeprints on it that had been discovered in the store's warehouse. Although the rest of the warehouse was dusty, the area around the plywood was clean, as if the plywood had been recently placed there. Investigator Govea concluded that this was a sign that "somebody had concealed themselves" in the warehouse before the robbery.

Investigator Govea also testified that she obtained parking lot surveillance video from a business approximately half a block away from the Family Dollar. That video, which was played for the jury, showed a dark-colored Volvo pull into the parking lot on the day before the robbery. The driver of the Volvo—a man who matched the perpetrator's description and who was wearing clothes similar to the perpetrator's—exited the car, walked around the parking lot, and then left shortly after arriving. Another Laredo police officer, Detective Edgar Garcia, testified that this behavior was consistent with someone "canvassing the area" to plan a crime.

Officer Rupert Martinez of the Laredo Police Department testified that on May 19, 2015, he was dispatched to assist another officer in a traffic stop of a suspect in recent robberies. Gibbs—who is an African-American man in his twenties—was the driver involved in that stop, and he was driving a dark-colored Volvo. Officer Martinez asked Gibbs if he had any weapons, but Gibbs would not respond, so Officer Martinez did a pat down search and discovered a black handgun—which turned out to be a BB gun—in Gibbs's pocket.

When Gibbs was booked into jail, he was measured at six feet tall and 229 pounds. Clothing that matched that worn by the Family Dollar robbery suspect was also found in Gibbs's possession, including a light-colored, long-sleeved shirt and a white baseball cap with a sticker on the brim. Gibbs was also wearing gray shoes like the ones worn by the Family Dollar robbery suspect, and the treads of his shoes appeared to match the footprints on the plywood found in the Family Dollar's warehouse. Detective Garza testified that after Gibbs's arrest, he compared Gibbs's picture to the surveillance footage from the Family Dollar and concluded that Gibbs and the Family Dollar robbery suspect were the same person. Additionally, both Castillo and Ayala were shown photo lineups and independently identified Gibbs as the man who robbed them.

At the conclusion of the guilt-innocence phase of trial, the jury found Gibbs guilty of two counts of robbery. Before the jury entered the courtroom for the penalty phase of the trial, the trial

court read an enhancement allegation regarding the Tennessee robbery conviction to Gibbs, and

Gibbs pleaded "not true":

> THE COURT: It is presented that, prior to the commission of the charged offense, Mr. Gibbs, on the 5th day of November, 2012, in Cause No. 11-02970, in the criminal court of Tennessee for the 30th Judicial District of Memphis, Division 8, the defendant was found and convicted of the offense of robbery. And to that allegation, do you plead that that is true or not true?
>
> THE DEFENDANT: Not true.

Nevertheless, on cross-examination during the penalty phase, Gibbs admitted that he had been convicted of robbery in Tennessee. The jury found that the accusation of a prior felony conviction was true, and it assessed punishment of 47 years' imprisonment and $10,000 in fines for each count of robbery. The trial court ordered those sentences to be served concurrently. This appeal followed.

## ANALYSIS

### Legal Insufficiency

In his first two issues, Gibbs argues that the evidence is legally insufficient to show beyond a reasonable doubt that he was the person who committed the Family Dollar robbery.

### Standard of Review

In reviewing a complaint that the evidence presented at trial is legally insufficient to support a jury's guilty verdict, we must determine whether any rational trier of fact could have found beyond a reasonable doubt that the defendant committed the essential elements of the charged offense. *See Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We view the evidence in the light most favorable to the jury's guilty verdict and resolve all reasonable inferences from the evidence in its favor. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016).

The jury has the sole responsibility "'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19). "Because the jury is the sole judge of witness credibility and determines the weight to be given to testimony," we must defer to its determinations. *Hines v. State*, 383 S.W.3d 615, 623 (Tex. App.—San Antonio 2012, pet. ref'd). "If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm the trial court's judgment." *Hernandez v. State*, 198 S.W.3d 257, 260 (Tex. App.—San Antonio 2006, pet. ref'd).

### Applicable Law

The identity of a perpetrator may be proven by direct or circumstantial evidence, "coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. The "beyond a reasonable doubt" standard "does not require the State to disprove every conceivable alternative to a defendant's guilt." *Ramsey v. State*, 473 S.W.3d 805, 808 (Tex. Crim. App. 2015).

### Application

Gibbs complains that the evidence is legally insufficient to show that he was the person who committed the Family Dollar robbery because Castillo and Ayala could not see the perpetrator's face and did not make an in-court identification of Gibbs during trial. According to Gibbs, "[n]o rational juror would conclude the state proved the identity of the perpetrator of the robbery beyond a reasonable doubt." The State counters that the evidence supports the jury's guilty verdict because Gibbs was "matched to the crime by his clothing" and was identified as the perpetrator "by multiple witnesses."

The jury heard evidence that the perpetrator was not wearing gloves and that fingerprints on objects "know[n] to have been handled by the perpetrator" did not belong to Gibbs. Nevertheless, both Castillo and Ayala independently identified Gibbs as the perpetrator after viewing a photo lineup made up of Gibbs and five similar looking men. Although neither Castillo or Ayala could see the perpetrator's entire face during the robbery, they both testified that they identified him based on parts of his face that they could see—Castillo on the side of his face and his hair, and Ayala on his eyes. Additionally, Castillo and Ayala indicated that they were "positive" and "100 percent sure" that the man they both separately identified in the photo lineup—Gibbs—was the same man who had robbed them. *See Threadgill v. State*, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (affirming a conviction where witness testified "he was 'positive' appellant was the shooter"). Gibbs's height, weight, and age were also consistent with the descriptions Castillo and Ayala gave police immediately after the robbery.

Furthermore, when Gibbs was arrested, he had clothing in his possession that matched what the perpetrator was wearing, including a white baseball cap with a sticker on the brim. *See Anderson v. State*, 461 S.W.3d 674, 679–80 (Tex. App.—Texarkana 2015, no pet.). Because the jury saw video of the robbery, it was able to compare the clothes the perpetrator was wearing with the clothes found in Gibbs's possession. *See id.* Gibbs also had a BB gun in his pocket that matched Castillo's description of the black handgun used in the robbery, and he was wearing gray Reebok shoes that were consistent with the shoes the perpetrator is seen wearing in the surveillance video. *See id.* Additionally, the jury saw evidence showing that the treads of Gibbs's shoes consisted of a geometric pattern that appeared to match the shoeprint found in the Family Dollar's warehouse. *See Castillo v. State*, 517 S.W.3d 363, 377 (Tex. App.—Eastland 2017, pet. ref'd). The pictures of the shoeprint also show the letters "bok," which is consistent with the Reebok shoes Gibbs was wearing when he was arrested. *See id.* Detective Garcia testified that the similarities between

Gibbs's shoes, the perpetrator's shoes, and the footprint in the warehouse were significant because "sometimes people change their clothes [after committing a crime], but they rarely change their shoes."

Finally, Gibbs was stopped and arrested while driving a dark-colored Volvo. The State presented evidence that a dark-colored Volvo was in a parking lot near the Family Dollar on the day before the robbery and that the driver of that car exhibited behavior consistent with "canvassing the area" as if preparing to commit a crime. The jury also saw video showing that the driver of that dark-colored Volvo in the parking lot wore clothes similar to those found in Gibbs's possession and worn by the Family Dollar suspect, including a white baseball cap.

We conclude that "[t]he logical force of the combined pieces of circumstantial evidence in this case, coupled with reasonable inferences from them, is sufficient to establish, beyond a reasonable doubt" that Gibbs was the person who committed the Family Dollar robbery. *Evans v. State*, 202 S.W.3d 158, 166 (Tex. Crim. App. 2006). Although the fingerprint evidence may seem to conflict with the evidence tying him to the crime, when the record supports conflicting inferences, we must presume the jury resolved the conflicts in favor of its verdict. *Anderson v. State*, 416 S.W.3d 884, 888 (Tex. Crim. App. 2013). Furthermore, we may not view the fingerprint evidence in isolation, but must consider the totality of the evidence "in combination." *Evans*, 202 S.W.3d at 164, 166. Here, even in light of the fingerprint evidence, we conclude that "the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Ramsey*, 473 S.W.3d at 809. Because the evidence presented at trial was sufficient to allow a rational juror to find beyond a reasonable doubt that Gibbs was the person who committed the Family Dollar robbery, we overrule Gibbs's first two challenges to the trial court's judgment. *See Gardner*, 306 S.W.3d at 285–86.

### *Reading of Enhancement Paragraph*

In his third issue, Gibbs argues that his sentence is void because "the enhancement paragraph contained in the indictment was not read to the jury nor a plea entered by [Gibbs]." The State counters that even if the amended indictment upon which Gibbs was tried did not contain an enhancement paragraph,[2] Gibbs nevertheless received reasonable notice of the State's intention to seek enhancement based on the Tennessee conviction. Gibbs argues, however, that no enhancement allegations were read to the jury at the start of the penalty phase and that he therefore lacked notice that the State was seeking an enhanced penalty under the amended indictment.

### *Applicable Law*

A criminal defendant is entitled to "'reasonable notice and an opportunity to be heard'" on the State's intention to seek an enhanced punishment based on a prior conviction. *See McNatt v. State*, 188 S.W.3d 198, 203 (Tex. Crim. App. 2006) (quoting *Oyler v. Boles*, 368 U.S. 448, 452 (1962)). Section 36.01 of the Texas Code of Criminal Procedure provides that "[w]hen prior convictions are alleged for purposes of enhancement only and are not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held[.]" TEX. CODE CRIM. PROC. ANN. art. 36.01. The Court of Criminal Appeals has held that the reading of enhancement allegations during the penalty phase of a bifurcated trial is mandatory. *See Turner v. State*, 897 S.W.2d 786, 788–89 (Tex. Crim. App. 1995). The court has also held, however, that if an enhancement allegation that is neither listed in the indictment nor timely read to the jury is included in the jury charge, a defendant who does not object to that error

---

[2] In its brief, the State argues that the record shows the trial court intended to grant its motion to amend the indictment to include an enhancement paragraph based on the Tennessee conviction. However, there is no reference to the Tennessee conviction in the only order in the appellate record granting a motion to amend the indictment. Nevertheless, "enhancement allegations need not be included in an indictment." *Brooks v. State*, 957 S.W.2d 30, 32 (Tex. Crim. App. 1997).

must "show egregious harm before relief may be granted" on appeal. *Marshall v. State*, 185 S.W.3d 899, 903 (Tex. Crim. App. 2006).

*Application*

The purpose of requiring the reading of an enhancement paragraph is "[t]o inform the accused of the charges against him and to inform the jury of the precise terms of the particular charge against the accused." *Turner*, 897 S.W.2d at 788 (internal quotation marks omitted). We conclude that those purposes were satisfied here. Before trial, the State filed two written notices of its intent to rely on the Tennessee robbery conviction during the penalty phase, as well as a motion to amend the indictment to include that conviction in an enhancement paragraph. *See Brooks*, 957 S.W.2d at 34 (holding that "prior convictions used as enhancements must be pled in some form"). The trial court read the State's allegation regarding that conviction to Gibbs in open court immediately before the penalty phase of the trial, and Gibbs pleaded "not true." *See Garza v. State*, 383 S.W.3d 673, 676–77 (Tex. App.—Houston [14th Dist.] 2012, no pet.). While Gibbs now contends that "there was no properly admitted evidence to support the enhancement allegations," both defense counsel and the State questioned him on the Tennessee robbery during the penalty phase, and he admitted that he had been convicted of that offense. *See id.* (holding no due process violation where defendant received late notice of enhancement allegation but did not request continuance or suggest he had a successful defense to the allegation). The State read the allegation regarding the Tennessee robbery conviction to the jury during its closing argument in the penalty phase. Finally, the court's charge for the penalty phase included that allegation and explained that Gibbs had pleaded "not true" to it. *See Marshall*, 185 S.W.3d at 903.

At a minimum, once the charge was read to the jury "it became abundantly clear that the state was asking for enhancement" beyond what was specified in the amended indictment. *Id.* At that point, if Gibbs believed the charge included enhancement allegations that had not been

included in the indictment or timely read to the jury, he had an obligation to object. *Id.* He did not do so. Under these circumstances, Gibbs was required to "show egregious harm before relief may be granted." *Id.* Because we conclude that he has not made such a showing, we overrule his third issue. *See Garza*, 383 S.W.3d at 677.

### Prior Conviction Enhancement

In his fourth issue, Gibbs argues that the indictment did not allege a prior conviction that supported sentencing him under the punishment range for a first-degree felony. The State counters that the punishment range applicable to Gibbs was properly enhanced based on the Tennessee robbery conviction.

#### Applicable Law

The Texas Penal Code provides that "if it is shown on the trial of a felony of the second degree that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a felony of the first degree." TEX. PENAL CODE ANN. § 12.42(b). "An out-of-state prior final felony conviction can be used to enhance a sentence imposed in Texas." *Ex parte Pue*, 552 S.W.3d 226, 231 (Tex. Crim. App. 2018).

#### Application

Gibbs argues that his sentence is "outside the range of punishment [that] is authorized by law and therefore illegal" because the original indictment identified a 2010 Texas state jail felony as the basis for an enhanced sentence. Gibbs is correct that a state jail felony may not be used to enhance punishment from the range applicable to a second-degree felony to the range applicable to a first-degree felony. TEX. PENAL CODE § 12.42(b). As explained above, however, the State sought enhancement based on Gibbs's Tennessee robbery conviction, not on the Texas state jail felony listed in the original indictment.

We must decide, then, whether the Tennessee robbery conviction arose out of the equivalent of a Texas state jail felony that would prohibit the enhancement at issue. *See id.* We hold that it did not. The Texas Penal Code provides that "any conviction not obtained from a prosecution under [that] code"—for example, an out-of-state conviction—shall be treated as a third-degree felony[3] if imprisonment in a penitentiary "is affixed to the offense as a possible punishment." TEX. PENAL CODE ANN. § 12.41(1); *Fowler v. State*, 567 S.W.3d 403, 405 (Tex. App.—San Antonio 2018, no pet.). Tennessee classifies robbery, the offense for which Gibbs was convicted in that state, as a Class C felony that is punishable by "not less than three (3) nor more than fifteen (15) years" of imprisonment. TENN. CODE ANN. §§ 39-13-401(b), 40-35-111(b)(3) (West 2019). While it is not clear from the record whether Gibbs actually served any prison time in Tennessee as a result of that conviction, he has not disputed that imprisonment in a penitentiary was a "possible punishment" under Tennessee law. *See* TEX. PENAL CODE § 12.41(1); *Fowler*, 567 S.W.3d at 405.

Accordingly, the trial court was required to treat Gibbs's Tennessee robbery conviction as the equivalent of a Texas third-degree felony. TEX. PENAL CODE ANN. § 12.41(1). Because the jury found that the allegation regarding the Tennessee robbery conviction was true, it was required to assess Gibbs's punishment under the range applicable to a first-degree felony. *Id.* § 12.42(b). We therefore overrule Gibbs's fourth issue.

### *Ineffective Assistance of Counsel*

In his final issue, Gibbs argues that his trial counsel was ineffective. The State counters that the record is not sufficiently developed to allow Gibbs to show that his trial counsel's performance was deficient.

---

[3] A third-degree felony is not a state jail felony. TEX. PENAL CODE ANN. § 12.04(a).

*Applicable Law*

"To prevail on a claim of ineffective assistance of counsel, the [appellant] must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Prine v. State*, 537 S.W.3d 113, 116 (Tex. Crim. App. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To make a showing of deficient performance, the appellant must demonstrate that his attorney's conduct fell below an objective standard of reasonableness to the extent that it "undermined the proper functioning of the adversarial process." *Id.* at 116–17. In reviewing such a claim, we must apply highly deferential scrutiny to trial counsel's performance. *Mata v. State*, 226 S.W.3d 425, 428 (Tex. Crim. App. 2007). The appellant bears the burden to overcome a strong presumption that his attorney's conduct was "within the wide range of reasonable professional assistance." *Prine*, 537 S.W.3d at 117 (internal quotation marks omitted).

To meet this burden, the appellant must show that the record "affirmatively demonstrate[s] trial counsel's alleged ineffectiveness." *Mata*, 226 S.W.3d at 430. The Texas Court of Criminal Appeals has noted that the record in a direct appeal is often insufficient to present an ineffective assistance claim, either because "[t]he very ineffectiveness claimed . . . prevent[ed] the record from containing the information necessary to substantiate such a claim" or because the trial court record "does not reflect counsel's reasons for doing or failing to do actions of which the defendant complains." *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997). Additionally, trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (internal quotation marks omitted). If trial counsel is not given that opportunity, then the reviewing court "should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). We may not find trial counsel's performance deficient

"if any reasonably sound strategic motivation can be imagined." *Lopez v. State*, 343 S.W.3d 137, 142–43 (Tex. Crim. App. 2011).

*Application*

Gibbs contends that the alleged deficiencies about which he complains are apparent from the record and can therefore be resolved on direct appeal. We consider each of his complaints in turn.

### 1.      *Voir dire and witness comments suggesting prior criminal history*

Gibbs first complains that he was denied effective assistance of counsel because his attorney did not object to certain comments the State made during voir dire. Specifically, he asserts that his attorney should have objected to statements that "the Defendant is the one that picks the time, the place, who or what is around, and what kind of evidence there is" and to discussion of sentencing enhancements. He also complains that his attorney did not object when two of the State's witnesses mentioned "prior robberies" during their testimony. Gibbs argues that both the State's and the witnesses' statements "only served to suggest[] to the jury panel that [he] had prior criminal history" and that any reasonably competent attorney would have objected to these comments, moved to strike them, requested a limiting instruction, and/or moved for a mistrial.

The record does not affirmatively show that Gibbs's trial counsel lacked a reasonably sound strategic motivation for failing to object to these statements. *See Bone v. State*, 77 S.W.3d 828, 830 (Tex. Crim. App. 2002). As a result, we may not "engage in retrospective speculation" to reach an ineffective counsel finding. *Lopez*, 343 S.W.3d at 142–43; *see also Lopez v. State*, 358 S.W.3d 691, 697 (Tex. App.—San Antonio 2011, pet. ref'd). Moreover, Gibbs has not shown that if an objection had been made, the trial court would have erred by overruling that objection. *See Gauna v. State*, 534 S.W.3d 7, 12 (Tex. App.—San Antonio 2017, no pet.). For these reasons, on

this record, we cannot say that trial counsel's performance was so deficient as to constitute ineffective assistance. *See Goodspeed*, 187 S.W.3d at 392.

### 2. Failure to conduct an independent investigation

Gibbs also complains that his trial attorney's performance was deficient because "there is ample evidence in the record indicating counsel did not investigate the facts of this case." Gibbs primarily bases this complaint on his contention that even though his defense theory was based on misidentification, "[t]here is no evidence in the record showing counsel sought to obtain the services of an Identification Expert." He also claims that his trial attorney only met with him "two or three times before trial, never sought to interview or seek out potential witnesses, and failed to present any witnesses or present any other evidence of a defense."

Based on this record, we are unable to determine whether trial counsel's pre-trial investigation in this case fell below an objective standard of reasonableness. We agree, as a general matter, that no reasonable trial attorney would wholly fail to investigate the facts of a case. *See Ex parte Wellborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). However, Gibbs does not point to any evidence in the record showing that trial counsel failed to investigate the facts of this case, and we have found nothing in the record to support that contention. The only indication to that effect comes from unsupported statements in Gibbs's brief, which are insufficient to demonstrate ineffective assistance of counsel. *See Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005). While the record shows Gibbs's attorney did not present any witnesses at trial, "[a]bsent a showing by appellant that he would have benefitted from the testimony, the decision not to call witnesses at either stage of trial does not raise the spectre of ineffective assistance." *Holland v. State*, 761 S.W.2d 307, 319 (Tex. Crim. App. 1988); *Monreal v. State*, 546 S.W.3d 718, 723 (Tex. App.—San Antonio 2018, pet. ref'd). As a result, nothing in this record indicates that trial

counsel's investigation of the case "was so outrageous that no competent attorney would have engaged in it." *Prine*, 537 S.W.3d at 122 (internal quotation marks omitted).

3.    *Failures to object, file motions to suppress, or cross-examine witnesses*

Gibbs also complains that he was denied effective assistance of counsel because his trial attorney failed to object to various pieces of evidence, did not seek to suppress the out-of-court identifications made by Castillo and Ayala, and did not cross-examine Ayala. As was the case with Gibbs's other ineffective assistance complaints, the record is silent about trial counsel's reasons for making these decisions. *See Monreal*, 546 S.W.3d at 722. Moreover, Gibbs presents these complaints as a bare list, without providing any analysis of his contentions or citing to any authority holding that these alleged failures fell below an objectively reasonable standard of performance. *See* TEX. R. APP. P. 38.1; *Ruiz v. State*, 293 S.W.3d 685, 693 (Tex. App.—San Antonio 2009, pet. ref'd). As a result, these complaints are inadequately briefed, and we do not address them. *Ruiz*, 293 S.W.3d at 693.

We overrule Gibbs's fifth issue.

## CONCLUSION

We affirm the trial court's judgment.

Beth Watkins, Justice

DO NOT PUBLISH