**Affirmed and Memorandum Opinion filed June 30, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-15-00467-CR

**MALCOLM JEROME ELLIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1421961**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Malcolm Jerome Ellis of aggravated robbery and assessed his punishment at twenty-five years' confinement.[1] Appellant challenges his conviction on the grounds that the evidence is legally insufficient to establish (1) his identification as one of the perpetrators of the robbery and (2) that he used or exhibited a firearm. We affirm.

---

[1] Appellant's punishment was enhanced by two prior felony convictions.

## Background

Employees at two Cash America pawn shops located about a block apart in the Houston area on Lawndale and Evergreen Streets emailed each other about two African American males they had seen acting suspiciously in the stores. Employees at both stores believed that these men were "casing" the stores for potential robbery; Cash America pawn shops had been robbed in the past and employees were trained to observe and report certain suspicious behavior. Surveillance video captured appellant at the Lawndale store shortly before the robbery at the Cash America on Evergreen occurred. The employees exchanged still photos of the suspicious males via email, including a photo of appellant. The manager at the Evergreen Cash America, which was later robbed, saw appellant and his cohort leaving in a black Grand Prix. This store manager was so concerned about the behavior of appellant and appellant's cohort that he left the store and reported to a nearby Houston Police Department (HPD) substation that he was concerned the store was going to be robbed.

Shortly after appellant and his cohort had "cased" both stores and the manager of the Evergreen location had returned, Garold, a customer, finished his business at the Evergreen Cash America and walked to the front door. He saw a woman he had seen in the store in line in front of him, and he opened the door—a controlled access door that was normally controlled by Cash America employees "buzzing" customers in—to let her return inside. When he opened the door, four males rushed inside and pushed Garold to the side. All of the males except appellant were wearing bandanas and carrying hammers. Appellant remained by the door, holding it open. Garold insisted that appellant allow him to leave. Although appellant initially told Garold he could not leave, Garold left the store while the robbery was in progress and called 911. During his interaction with

appellant, Garold saw that appellant had a gun in the waistband of his pants, although appellant did not threaten Garold with the gun.

Witnesses described the robbery as a "smash and grab" incident, with appellant's three cohorts smashing glass cases with hammers and grabbing the jewelry from inside the cases. None of the robbers displayed guns to any of the employees inside the store. Several employees testified that they were in fear for their life because they did not know if any of the robbers had guns in addition to the hammers used to smash the jewelry cases. The robbery lasted only moments. The manager of the store saw the robbers leave in what he believed was the same black Grand Prix he had seen appellant in earlier. Garold, who was next door hiding in some bushes, saw appellant get into the same car as the other suspects.

By the time an HPD patrol officer arrived, the suspects had fled the scene. The jewelry displays were broken and jewelry was missing; the robbers left a hammer behind in one of the broken displays. Neither fingerprints nor DNA evidence linked appellant to the offense. Cash America provided a list of missing items, one of which was a six-inch gold rope chain ID bracelet.

The day after the robbery, appellant asked a friend, Jesus, to pawn a bracelet for him in exchange for some money. Although Jesus suspected the bracelet had been stolen, he agreed to pawn it. Appellant and Jesus went to another Cash America location on Telephone Road to pawn the bracelet. Jesus pawned the bracelet at this store and provided his identification information to the store. Several photos were taken during the transaction, and appellant appears in these photos along with Jesus. After Jesus pawned the bracelet, appellant told Jesus that he had gotten the bracelet in a robbery. This bracelet matched the description of the gold rope chain ID bracelet stolen during the robbery of the Evergreen Cash America. An HPD robbery squad investigator picked up the bracelet and the

3

contact information for Jesus. After questioning Jesus, HPD officers arrested appellant for the robbery.

Once appellant had been arrested, Garold tentatively identified him in a live line-up. Garold stated at trial that he was 80 to 90 percent sure that appellant was the person whom he had seen at the door of the Evergreen Cash America. He also demonstrated for the jury how he had seen the gun in the waistband of appellant's pants. Further, video surveillance from the Lawndale store and photographs from both the "casings" at the Evergreen and Lawndale locations of Cash America were admitted into evidence, including several screen shots of appellant. Photos from the sale of the gold chain bracelet at the Telephone Road Cash America location, in which appellant was also visible, were admitted into evidence. Finally, a video of the robbery was admitted into evidence, although appellant cannot be seen on this video.

After hearing the evidence and argument of counsel, the jury convicted appellant of aggravated robbery as charged in the indictment. The jury assessed appellant's punishment, enhanced by two prior felony convictions, at twenty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division, and the trial court entered judgment accordingly. This appeal timely followed.

## Standard of Review and Applicable Law

Both of appellant's issues concern the legal sufficiency of the evidence. When determining whether evidence is legally sufficient to support the verdict, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)

4

(citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We may not substitute our judgment for that of the fact finder by re-evaluating the weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

To convict appellant of aggravated robbery as charged in the indictment, the State was required to prove that appellant used or exhibited a deadly weapon— namely, a firearm—while committing robbery. *See* Tex. Penal Code § 29.03(a); *see also Thomas v. State*, 444 S.W.3d 4, 8-9 (Tex. Crim. App. 2014). In this case, appellant does not dispute that a robbery occurred. Instead, he challenges only the sufficiency of two elements of the offense: whether the State provided sufficient evidence that he (1) was one of the people who committed the offense, and (2) used or exhibited a firearm during the commission of the offense. We address each of these contentions in turn.

## Identification of Appellant

In his first issue, appellant urges that the evidence is legally insufficient to support his identification as one of the perpetrators of the robbery. We begin by noting that each fact need not point independently to appellant's guilt, so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Further, the State may prove appellant's identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that

5

evidence. *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009). With these principles in mind, we consider the evidence in this case.

Garold, a customer at the Evergreen Cash America, testified that he was 80 to 90 percent sure that appellant, whom he tentatively identified in a live line-up, was the same person he saw holding the door when the robbery happened. That Garold only tentatively identified appellant in the line-up does not preclude appellant's conviction; instead, it was a fact for the jury to weigh and consider. *Cf. Livingston v. State*, 739 S.W.2d 311, 329 (Tex. Crim. App. 1987) ("The fact that a witness cannot give a positive identification of another person goes to the weight of his testimony . . .; therefore, the lack of a positive identification is a jury issue."); *Anderson v. State*, 461 S.W.3d 674, 679 (Tex. App.—Texarkana 2015, no pet.) ("The fact that Haworth did not identify Anderson in the photographic lineup is a factor for the jury to consider and resolve.").

Additionally, the surveillance videos and still shots establish that appellant visited the Cash America stores on Lawndale and Evergreen shortly before the robbery, and employees testified that they believed appellant and his cohort were "casing" the stores with an eye toward robbing them. Appellant left after "casing" the stores in a car that matched the description of the car that the robbers were later seen leaving the Evergreen Cash America in after the robbery. Finally, appellant was with his friend Jesus the day after the robbery when Jesus pawned a bracelet that matched the description of one taken during the robbery. Jesus testified that appellant told him appellant had stolen this bracelet in a robbery.

The jury was entitled to credit Garold's identification of appellant as the "door man" during the robbery, especially because his identification was corroborated by other inculpatory evidence. This evidence includes appellant's suspicious behavior at the Cash America stores shortly before the robbery, witness

testimony that the robbers fled the scene in a car matching one appellant had been seen in earlier that day, and Jesus's testimony that appellant provided him with a stolen bracelet to pawn that matched the description of one of the items stolen during the robbery. *Cf. Gardner*, 306 S.W.3d at 285–86. Taken as a whole and viewing this evidence in the light most favorable to the jury's verdict, the cumulative force of all the incriminating circumstances is sufficient to support appellant's identification as one of the robbers. *See id.*; *see also Hooper*, 214 S.W.3d at 13.

We overrule appellant's first issue.

### Use or Exhibition of Firearm

In his second issue, appellant contends that the evidence is insufficient to establish that he used or exhibited a firearm during the commission of the robbery.[2] *See* Tex. Penal Code § 29.03(a). Appellant asserts that "he did not use a firearm to threaten anyone" and that he "did not display one or threaten anyone with it." He claims that "[a]ny exposure of the weapon . . . was by the evidence inadvertent" and there is "no evidence that [a]ppellant consciously displayed it or showed it during the course of the offense."

Exhibiting a deadly weapon means that the weapon was consciously shown or displayed during the commission of the offense; using a deadly weapon means it was employed or utilized to achieve its purpose. *See Plummer v. State*, 410 SW.3d 855, 858 (Tex. Crim. App. 2013). In the context of a violent offense,[3] if a person exhibits a deadly weapon without using it to harm or threaten when committing a

---

[2] Appellant does not dispute that a gun is a firearm or that a firearm is per se a deadly weapon. *See* Tex. Penal Code § 1.07(a)(17)(A) (defining "deadly weapon" to include, among other things, a firearm).

[3] It is undisputed that aggravated robbery is a violent offense.

felony, the deadly weapon still "provides intimidation value that assists the commission of the felony." *Id.* at 862. With these principles in mind, we consider the evidence in this case.

As described above, the evidence of appellant's use or exhibition of a firearm came through Garold's testimony. Garold stated that, during his brief confrontation with appellant, he noticed that appellant had a gun tucked into the waistband of his pants. Garold explained that his father was a police officer, so he had been around guns and was familiar with them. Garold demonstrated, using a stapler, how appellant was carrying the gun:

> Q. And if you could just stand up for a moment. Using this stapler as if it were a weapon can you kind of show how in your pants or how it was you saw it on him?
>
> A. *Indicating*.
>
> He had it with his shirt covered *like this*. With his shirt covered.

(emphasis added). Garold further demonstrated how much of the gun he saw:

> Q. And if you could with your hand show us how much of it you were – by leaving it exposed how much were you able to see?
>
> A. *Just that much*. You could just see the barrel inside of his pants.

(emphasis added). On cross-examination, defense counsel had Garold again stand up and demonstrate how appellant was carrying the weapon using the stapler:

> Q. Let me go over this with you again 'cause if I can get that stapler, could you stand up and show us again 'cause I was a little confused by your demonstration. The gun was – you said it was in his pants but you showed us the shirt was covering it right? Was the shirt?
>
> A. *Like this*. It wasn't totally in. *It was like that*.
>
> Q. So it was *like that*. Now, so you did not see – you weren't able to see the barrel correct?

8

A.  Not able to see *this part* but when he moved to let me out I saw the butt of the gun.

(emphasis added).

Garold's testimony established that appellant brought a gun to a robbery. *See, e.g.*, *Rogers v.* State, 756 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (explaining that courtroom demonstrations may clarify a witness's testimony and should be viewed as supporting the jury's verdict).  And this gun was partially visible: Garold saw it in the waistband of appellant's pants while appellant was attempting to keep Garold from leaving the store.  *See id.*  From this evidence, the jury reasonably may have inferred that appellant deliberately placed the gun within easy reach as he was guarding the door of the Cash America during the robbery to facilitate the commission of the offense.  *Cf. McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) ("Had the knife been completely concealed by appellant's clothing, additional facts would have been needed to establish that the butcher knife was used.  But the knife was partially exposed, and from that exposure, the factfinder could rationally conclude that the knife was exhibited during the criminal transaction, or at least, that its presence was used by appellant to instill in the complainant apprehension, reducing the likelihood of resistance during the encounter.").

In short, because there is evidence that appellant was carrying a partially visible gun in the waistband of his pants while blocking the door during the commission of a violent felony, a rational juror could have found beyond a reasonable doubt that appellant exhibited a firearm.  *See id.*; *see also Plummer*, 410 S.W.3d at 862.

Thus, there is legally sufficient evidence to support appellant's conviction of aggravated robbery, and we overrule his second issue.

9

## Conclusion

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     Sharon McCally
            Justice


Panel consists of Justices Christopher, McCally, and Busby.
Do Not Publish — Tex. R. App. P. 47.2(b).